UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEDERAL HOME LOAN BANK OF
BOSTON,

                    Plaintiff,

          v.

ALLY FINANCIAL, INC. F/K/A GMAC
LLC; BANC OF AMERICA FUNDING
CORPORATION; BANK OF AMERICA
CORPORATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; BARCLAYS
CAPITAL INC.; BCAP LLC; BEAR
STEARNS ASSET BACKED SECURITIES
I LLC; CAPITAL ONE FINANCIAL
CORPORATION; CAPITAL ONE,
NATIONAL ASSOCIATION; CHEVY
CHASE FUNDING LLC; CITICORP
MORTGAGE SECURITIES, INC.;
CITIGROUP FINANCIAL PRODUCTS,
INC.; CITIGROUP GLOBAL MARKETS
INC.; CITIGROUP GLOBAL MARKETS
REALTY CORP.; CITIGROUP INC.;
CITIGROUP MORTGAGE LOAN TRUST
INC.; CITIMORTGAGE, INC.;
COUNTRYWIDE FINANCIAL
CORPORATION; COUNTRYWIDE HOME
LOANS, INC.; COUNTRYWIDE
SECURITIES CORP.; CREDIT SUISSE
(USA), INC.; CREDIT SUISSE FIRST
BOSTON MORTGAGE SECURITIES
CORP.; CREDIT SUISSE HOLDINGS
(USA), INC.; CREDIT SUISSE
SECURITIES (USA) LLC; CWALT, INC.;
CWMBS, INC.; DB STRUCTURED
PRODUCTS, INC.; DB U.S. FINANCIAL
MARKET HOLDING CORPORATION;
DEUTSCHE ALT-A SECURITIES, INC.;
DEUTSCHE BANK SECURITIES INC.;
DLJ MORTGAGE CAPITAL, INC.; EMC
MORTGAGE CORPORATION; FITCH,
INC.; GMAC MORTGAGE GROUP LLC
F/K/A GMAC MORTGAGE GROUP, INC.;

Civil Action No. 11-10952-GAO

**MEMORANDUM OF LAW IN
SUPPORT OF THE REMOVING
DEFENDANTS' MOTION FOR
LEAVE TO FILE SUPPLEMENTAL
NOTICE OF REMOVAL**

*[caption continued on next page]*

A/74603305.1

GOLDMAN, SACHS & CO.; IMH ASSETS
CORP.; IMPAC FUNDING
CORPORATION; IMPAC MORTGAGE
HOLDINGS, INC.; IMPAC SECURED
ASSETS CORP.; J.P. MORGAN
ACCEPTANCE CORPORATION I; J.P.
MORGAN MORTGAGE ACQUISITION
CORP.; J.P. MORGAN SECURITIES LLC
F/K/A BEAR, STEARNS & CO. INC. AND
J.P. MORGAN SECURITIES INC.;
JPMORGAN CHASE & CO.; JPMORGAN
SECURITIES HOLDINGS LLC; MERRILL
LYNCH & CO., INC.; MERRILL LYNCH
MORTGAGE INVESTORS, INC.;
MERRILL LYNCH MORTGAGE
LENDING, INC.; MERRILL LYNCH,
PIERCE, FENNER & SMITH
INCORPORATED; MOODY'S
CORPORATION; MOODY'S INVESTORS
SERVICE, INC.; MORGAN STANLEY;
MORGAN STANLEY & CO. INC.;
MORGAN STANLEY CAPITAL I INC.;
MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC; MORTGAGE
ASSET SECURITIZATION
TRANSACTIONS, INC.; MORTGAGEIT
SECURITIES CORP.; MORTGAGEIT,
INC.; NOMURA ASSET ACCEPTANCE
CORPORATION; NOMURA CREDIT &
CAPITAL, INC.; NOMURA HOLDING
AMERICA, INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; RBS
ACCEPTANCE INC. F/K/A GREENWICH
CAPITAL ACCEPTANCE, INC.; RBS
FINANCIAL PRODUCTS INC. F/K/A
GREENWICH CAPITAL FINANCIAL
PRODUCTS, INC.; RBS HOLDINGS USA
INC. F/K/A GREENWICH CAPITAL
HOLDINGS, INC.; RBS SECURITIES INC.
F/K/A GREENWICH CAPITAL
MARKETS, INC.; RESIDENTIAL
ACCREDIT LOANS, INC.; RESIDENTIAL
FUNDING COMPANY, LLC F/K/A
RESIDENTIAL FUNDING
CORPORATION; SANDLER O'NEILL +
PARTNERS, L.P.; STANDARD & POOR'S

*[caption continued on next page]*

A/74603305.1

FINANCIAL SERVICES LLC;
STRUCTURED ASSET MORTGAGE
INVESTMENTS II INC.; THE BEAR
STEARNS COMPANIES LLC F/K/A THE
BEAR STEARNS COMPANIES INC.; THE
MCGRAW-HILL COMPANIES, INC.; UBS
AMERICAS INC.; UBS REAL ESTATE
SECURITIES INC.; UBS SECURITIES
LLC; WAMU CAPITAL CORP.; WELLS
FARGO & COMPANY; WELLS FARGO
ASSET SECURITIES CORPORATION;
WELLS FARGO BANK, NATIONAL
ASSOCIATION; and DEFENDANTS JOHN
DOE 1-50,

               Defendants.

A/74603305.1

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................. 1

FACTUAL BACKGROUND.................................................................. 2

ARGUMENT ....................................................................................... 5

    I.      THE SUPPLEMENTAL NOTICE OF REMOVAL IS TIMELY FILED ............ 5

    II.    LEAVE TO FILE A SUPPLEMENTAL NOTICE OF REMOVAL SHOULD BE "FREELY GRANTED" AND IS APPROPRIATE HERE ............ 7

    III.   THE EDGE ACT CONFERS ORIGINAL FEDERAL JURISDICTION HERE ................................................................................................ 8

          A.    Purpose and Scope of the Edge Act ......................................... 9

          B.    This Action Involves Territorial Banking Activities ............... 11

          C.    The Sale of RMBS Securitizations Constituted "International Financial Operations" ............................................................ 12

    IV.   ALL DEFENDANTS CONSENT TO REMOVAL ............................................ 14

CONCLUSION ................................................................................... 14

A/74603305.1

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Acosta v. Master Maint. & Constr., Inc.*,
   52 F. Supp. 2d 699 (M.D. La. 1999) ............................................................................5

*Aktiebolaget Svenska Handelsbanken v. Chase Manhattan Bank*,
   69 F. Supp 833 (S.D.N.Y. 1947) ................................................................................5

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
   No. 11 Civ. 6212, 2011 WL 5022716 (S.D.N.Y. Oct. 20, 2011) ...........................1, 10, 11, 12

*Bank of Am. Corp. v. Lemgruber*,
   385 F. Supp. 2d 200 (S.D.N.Y. 2005)..............................................................10, 11, 12, 13

*Burgos v. Citibank, N.A.*,
   432 F.3d 46 (1st Cir. 2005).........................................................................................10, 11

*Carcieri v. Salazar*,
   555. U.S. 379 (2009)......................................................................................................7

*CI Int'l Fuels, Ltd. v. Helm Bank, S.A.*
   707 F. Supp. 2d 1351 (S.D.Fla. 2010) .......................................................................6, 14

*Clarken v. Citicorp Diners Club, Inc.*,
   No. 01 Civ. 5123, 2001 WL 1263366 (N.D. Ill. Oct. 22, 2001)....................................14

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)........................................................................................................1

*Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*,
   646 F.2d 688 (1st Cir. 1981)..........................................................................................3

*Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*,
   690 F.2d 1 (1st Cir. 1982)........................................................................................10, 11

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
   629 F.2d 786 (2d Cir. 1980)..................................................................................10-11, 12

*Davis v. Life Investors Ins. Co. of Am.*,
   214 F. Supp. 2d 691 (S.D. Miss. 2002).........................................................................8

*Ellenburg v. Spartan Motors Chassis, Inc.*,
   519 F.3d 192 (4th Cir. 2008) .........................................................................................8

*First Fed. Sav. & Loan Ass'n of P.R. v. Ruiz de Jesus*,
   644 F.2d 910 (1st Cir. 1981)..........................................................................................3

A/74603305.1

*First Fed. Sav. & Loan Ass'n of P.R. v. Zequiera*,
  305 F. Supp. 37 (D.P.R. 1969)........................................................................10

*Gen. Star Indem. Co. v. Platinum Indem. Ltd. Bank of Am., N.A.*,
  No. 00 Civ. 4960, 2001 WL 40763 (S.D.N.Y. Jan. 17, 2001)....................................8

*Grow Grp., Inc. v. Jandernoa*,
  No. 94 Civ. 5679, 1995 WL 60025 (S.D.N.Y. Feb. 10, 1995)...................................7

*Highland Crusader Offshore Partners, L.P. v. Lifecare Holdings, Inc.*,
  627 F. Supp. 2d 730 (N.D. Tex. 2008) ...........................................................13

*Hill v. Citicorp*,
  804 F. Supp 514 (S.D.N.Y. 1992)............................................................5, 6, 7

*In re Lloyd's Am. Trust Fund Litig.*,
  928 F. Supp. 333 (S.D.N.Y. 1996)....................................................10, 12, 13

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
  No. 09 Civ. 2137, 2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ...............................2

*Kingman* v. *Sears, Roebuck & Co.*, 526 F. Supp. 1182 (D. Me. 1981) ...........................7

*Libra Bank Ltd. v. Banco Nacional de Costa Rica*,
  No. 81 Civ. 7624, 1981 U.S. Dist. LEXIS 16596 (S.D.N.Y. Dec. 18, 1981)....................5, 7

*Magel v. Fed. Reserve Bank of Philadelphia*,
  776 F. Supp. 200 (E.D. Pa. 1991) ..............................................................5, 7

*Mattel, Inc. v. Bryant*,
  441 F. Supp. 2d 1081 (C.D. Cal. 2005) ..........................................................8

*Mills v. Allegiance Healthcare Corp.*,
  178 F. Supp. 2d 1 (D. Mass. 2001) ..............................................................9

*Padilla-Morales v. Shell Co. (Puerto Rico) Ltd.*,
  No. 04 Civ. 2276, 2005 WL 4655134 (D.P.R. June 29, 2005)...................................8

*Pinto v. Bank One Corp.*,
  No. 02 Civ. 8477, 2003 WL 21297300 (S.D.N.Y. June 3, 2003).............................12, 14

*Ponce Fed. Bank, FSB v. Instituto Medico del Norte, Inc.*,
  643 F. Supp. 424 (D.P.R. 1986).............................................................5, 6, 14

*Racepoint Partners, LLC v. JPMorgan Chase Bank*,
  No. 06 Civ. 2500, 2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ...........................13

*San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*,
  236 F.R.D. 491 (E.D. Cal. 2006) ...............................................................7

A/74603305.1

*Stamm v. Barclays Bank of N.Y.,*
    960 F. Supp. 724 (S.D.N.Y. 1997).......................................................................13

*Structural Sys., Inc. v. Sulfaro,*
    692 F. Supp. 34 (D. Mass. 1988) ........................................................................7

*Travis v. Nat'l City Bank of N.Y.,*
    23 F. Supp. 363 (E.D.N.Y. 1938) .......................................................................13

## STATUTES AND RULES

12 U.S.C. §§ 611 *et seq.*................................................................................1, 9

12 U.S.C. § 632 .......................................................................................... passim

28 U.S.C. § 1334 .............................................................................................8

28 U.S.C.§ 1446 .............................................................................................5

28 U.S.C.§ 1446(a) ........................................................................................8

28 U.S.C.§ 1446(b) ........................................................................................6

28 U.S.C.§ 1446(c)(1)....................................................................................6

Edge Act, Chapter 18, 41 Stat. 378 (1919)...................................................9

Fed. R. Civ. P. 15...........................................................................................7

## OTHER AUTHORITIES

58 Cong. Rec. 4953-54 (1919).......................................................................9

CHARLES ALAN WRIGHT & ARTHUR M. MILLER, FEDERAL PRACTICE AND PROCEDURE
    § 3630.1 (3d ed. 2009) .................................................................................4

## PRELIMINARY STATEMENT

The Supreme Court has recognized that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Here, Defendants have previously asserted federal jurisdiction on two grounds: (1) the Congressional charter of the Plaintiff, Federal Home Loan Bank of Boston ("FHLB" or "the Bank") provides that it may "sue or be sued" in federal court; and (2) the Bank's claims "relate to" the bankruptcy proceedings of at least 30 bankrupt entities involved in nearly half of the 115 residential mortgage-backed securities ("RMBS") pass-through certificates at issue.

On October 20, 2011, the United States District Court for the Southern District of New York held that the Edge Act, 12 U.S.C. §§ 611 *et seq.*, conferred federal jurisdiction in litigation involving RMBS where, as here, some of the mortgage loans backing the RMBS were originated in U.S. territories, one or more federally-chartered banks were parties to the case and some of the defendants were subsidiaries of foreign banks.  *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6212, 2011 WL 5022716, at *1 (S.D.N.Y. Oct. 20, 2011) ("*AIG*") (attached as Exhibit A hereto).

As in *AIG*, the Edge Act provides two additional independent grounds for federal jurisdiction over this action beyond those previously identified by the Defendants: (1) the claims arise out of "transactions involving international or foreign banking" activities (*e.g.*, out of those RMBS which include loans originated in Puerto Rico), and (2) the claims arise out of "other international or foreign financial operations" (*i.e.*, out of the sale of securities involving international financial services entities).  12 U.S.C. § 632.  By the terms of the Edge Act itself, these additional grounds for removal may be asserted "at any time before the trial."  *Id.*

Accordingly, the Removing Defendants[1] seek leave to file the attached Supplemental Notice of Removal so that **all** bases for federal jurisdiction may be considered by this Court in determining the Bank's motion for remand.

## FACTUAL BACKGROUND

Between approximately 2005 and 2007, the Bank purchased more than $5.9 billion in RMBS certificates (the "Certificates") in which various Defendants were involved through a process known as securitization.  First, originators offered mortgages to homeowners to finance the purchase of residential property.  Depositors then purchased the mortgages and deposited pools of mortgages into trusts, which then issued the Certificates purchased by the Bank.  *See In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137, 2010 WL 3239430, at *2 (S.D.N.Y. Aug. 17, 2010) (describing securitization process).  Many RMBS also include various forms of credit enhancement, which provides protection to purchasers in the event of defaults on the underlying loans.  Credit enhancement can include, *inter alia*, over-collateralization (the assets in the trust are greater than the interests sold), subordination (senior tranches are paid before more junior tranches), and cross-collateralization (payments on loans in one group can be used to make up for shortfalls on loan payments in another group in the same RMBS offering).  Additional features included interest rate swaps or credit default swaps, often with foreign counterparties responsible for paying on the swaps in the event certain conditions were met.  Such features can be important to RMBS purchasers, given the protection they provide against substantial decreases in the value of the underlying loan pools or the ability to make scheduled payments as provided for in the Certificates, as alleged by the Bank here.

---

[1] Bear Stearns Asset Backed Securities I, LLC, EMC Mortgage Corporation, J.P. Morgan Acceptance Corporation I, J.P. Morgan Mortgage Acquisition Corp., J.P. Morgan Securities LLC (f/k/a Bear, Stearns & Co. Inc. and J.P. Morgan Securities, Inc.), JPMorgan Chase & Co., JPMorgan Securities Holdings, LLC, Structured Asset Mortgage Investments II, Inc., The Bear Stearns Companies LLC (f/k/a The Bear Stearns Companies Inc.), and WaMu Capital Corp. are collectively referred to as the Removing Defendants.  The Removing Defendants appear specially for the purpose of removal only.  They reserve all defenses as to jurisdiction, service, or otherwise that may be available in this action.

The Bank, itself a federally-chartered institution, alleges that the Defendants – including at least three other federally-chartered banks[2] – made untrue statements and omissions in connection with the sale of the Certificates concerning underwriting practices surrounding the origination of the mortgage loans underlying the Certificates.  (Compl. ¶¶ 12-15, 17, 150, 162, 167, 170, 311, 343, 369, 439, 715-806).   According to the Bank, the Defendants failed to "accurately describe the loans in the Offering Documents so that investors such as the Bank could ascertain the true risk of the Certificates" and "accurately describe key characteristics of the mortgages and the securitization of the mortgages."  (*Id.* ¶¶ 10, 13; *see also id.* ¶¶ 16, 39, 49, 51, 56, 62, 67, 70, 89-90, 92, 109, 112, 119-20, 129, 160, 184, 188-239, 242-585, 807-42 (alleging issues with the mortgage origination process and purported departures from underwriting guidelines for loans in the pools underlying the Certificates)).

The mortgage pools underlying at least two of the Certificates purchased by the Bank – CMALT 2007-A4 1A7 and TMTS 2007-6ALT A1 – included mortgages for properties in Puerto Rico.[3]  *See*  Decl. of Theo J. Robins in Supp. of Removing Defs.' Mot. for Leave to File Supp'l Notice of Removal ("Robins Decl."), Ex. A (Pro. Supp. CMALT 2007-A4 at 35); Ex. B (Priv. Placement Memo. TMTS 2007-6ALT at II-5).  Likewise, an additional 23 offerings have a swap feature with a foreign counterparty, all of which were disclosed in the offering documents.[4]  For

---

[2]  These federally-chartered bank Defendants include Wells Fargo Bank, N.A., Bank of America, N.A., and Capital One, N.A.

[3]  Banking transactions in Puerto Rico are considered activities in a "dependency or insular possession of the United States" encompassed by the Edge Act.  *First Fed. Sav. & Loan Ass'n of P.R. v. Ruiz de Jesus*, 644 F.2d 910, 914 (1st Cir. 1981); *Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*, 646 F.2d 688, 689 (1st Cir. 1981).

[4]  *See* Robins Decl., Ex. C (Pro. Supp. TMST 2007-1 at S-4, S-39 - S-40) (identifying Credit Suisse International, a U.K. Bank, as the auction swap counterparty); Exs. D, F (Pro. Supp. ARMT 2006-2 at S-6, S-63; Pro. Supp. ARMT 2007-1 at S-6, S-49) (identifying Credit Suisse International as the cap counterparty); Ex. E (Pro. Supp. ARMT 2006-3 at S-6, S-50, S-95) (identifying Credit Suisse International as the cap and swap counterparty); Ex. G (Pro. Supp. (ARMT 2007-2 at S-6, S-44) (identifying Credit Suisse International as the swap counterparty); Ex. H (Pro. Supp. CWALT 2006-OA8 at S-87) (identifying the corridor swap contract with UBS Real Estate Securities, Inc., a subsidiary of UBS AG, incorporated in Switzerland); Ex. I (Pro. Supp. BCAP 2006-AA1 at 7) (identifying Barclays Bank PLC as the swap provider); Ex. J (Priv. Placement Memo. CCMFC 2006-2 at 1) (identifying Credit Suisse AG, acting through its Cayman Island branch, as the swap provider); Exs. K and L (Priv. Placement Memo. CCMFC

(Footnote Continued on Next Page.)

example, Credit Suisse International, a U.K. bank, served as either the interest rate swap or interest rate cap counterparty for eight of the RMBS offerings at issue, and served as the auction swap counterparty for an additional offering.   Both Credit Suisse International's foreign citizenship and its role in these offerings were clearly disclosed in the very offering materials that the Bank cites as the source of the alleged misrepresentations and omissions underlying its claims.

In addition, many of the Defendants are either domestic limited liability corporations with members who are foreign financial services entities,[5] or are wholly-owned direct or indirect subsidiaries of foreign financial services corporations.   Indeed, these foreign-affiliated Defendants were involved in the origination, securitization, underwriting, and/or sale of almost half of the Certificates purchased by the Bank.

On or about April 20, 2011, the Bank filed its Complaint in Massachusetts state court. The Removing Defendants filed their original Notice of Removal on May 26, 2011 on grounds that federal jurisdiction exists here because (1) the Bank's Congressional charter provides that it may "sue or be sued" in federal court, and (2) the Bank's claims "relate to" the bankruptcy

---

(Footnote Continued from Previous Page.)

2007-1 at 1; Priv. Placement Memo. CCMFC 2007-2 at 1) (identifying Credit Suisse International as the swap provider); Exs. M, N, O (Pro. Supp. BALTA 2006-3 at S-106 - S-107; Pro. Supp. BALTA 2006-4 at S-97; Pro. Supp. BSMF 2006-AR5 at S-48) (identifying ABN AMRO Bank N.V., a public limited liability company incorporated under the laws of the Netherlands, as the cap counterparty); Exs. P, Q, R, S (Pro. Supp. AHMA 2007-2 at S-4 - S-7, S-12 - S-13; Pro. Supp. DBALT 2006-AR4 at S-2, S-64 - S-72; Pro. Supp. DBALT 2006-AR5 at S-2, S-104 - S-114; Pro. Supp. DBALT 2007-AR1 at S-2, S-69 - S-73) (identifying New York branch of Deutsche Bank AG as swap provider); Exs. T, U, V (Pro. Supp. NAA 2006-AF2 at S-2, S-14 - S-16; Pro. Supp. NAA 2006-AR4 at S-8, S-82 - S-90; Pro. Supp. NAA 2007-3 at S-2, S-6 - S-8) (identifying Swiss Re Financial Products Corporation, a subsidiary of Swiss Reinsurance Company AG, incorporated in Switzerland, as swap provider); Ex. W (Pro Supp. IMSA 2005-2 at 9) (identifying Barclays Bank PLC as swap provider); Ex. X (Pro. Supp. MANA 2007-A3 at S-3) identifying Royal Bank of Scotland plc, a company "limited by shares incorporated under the law of Scotland" as swap counterparty); Ex. Y (Pro. Supp. MARM 2005-8 at S-13) (identifying UBS AG, London branch as swap provider).

[5]   For purposes of federal court jurisdiction, such LLCs with foreign members are considered non-domestic alien parties.   *See* 13F CHARLES ALAN WRIGHT & ARTHUR M. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3630.1 (3d ed. 2009) ("[C]itizenship of all members of an unincorporated association will be taken into account in determining the association's citizenship when a question of diversity jurisdiction arises.").

proceedings of at least 30 bankrupt entities involved in nearly half of the 115 Certificates at issue.  The Bank has since filed a motion to remand this action to state court, and a hearing on the Bank's motion was held on October 12, 2011.

## ARGUMENT

## I.   THE SUPPLEMENTAL NOTICE OF REMOVAL IS TIMELY FILED

Under the Edge Act's removal provision, "any defendant . . . may, *at any time before the trial thereof*, remove [the] suit[] from a State court into the district court of the United States for the proper district by following the procedure for the removal of cases otherwise provided by law."  12 U.S.C. § 632 (emphasis added).  Accordingly, the majority of courts conclude that Section 632 allows for removal after the expiration of the thirty-day period from the service of the complaint provided under the general removal statute, 28 U.S.C. § 1446 ("Section 1446"). *See, e.g.*, *Hill v. Citicorp*, 804 F. Supp 514, 516-17 (S.D.N.Y. 1992) (finding the thirty-day time period inapplicable to removal petitions filed under the Edge Act); *Magel v. Fed. Reserve Bank of Philadelphia*, 776 F. Supp. 200, 202 (E.D. Pa. 1991) (same); *Libra Bank Ltd. v. Banco Nacional de Costa Rica*, No. 81 Civ. 7624, 1981 U.S. Dist. LEXIS 16596, at *11 (S.D.N.Y. Dec. 18, 1981) (same), *rev'd on other grounds*, 676 F.2d 47 (2d Cir. 1982); *Aktiebolaget Svenska Handelsbanken v. Chase Manhattan Bank*, 69 F. Supp 833, 834 (S.D.N.Y. 1947) (same).[6]

While at least one district court within this circuit – *Ponce Fed. Bank, FSB v. Instituto Medico del Norte, Inc.*, 643 F. Supp. 424, 426 (D.P.R. 1986) – has reached a different conclusion in light of the Edge Act's requirement that removing parties follow "the procedure for the removal of cases otherwise provided by law," that decision should not be followed here.  Not only does this holding ignore the plain statutory language of Section 632, but it has also been

---

[6]  This approach has also been followed by courts interpreting identical language in other statutes.  *See, e.g.*, *Acosta v. Master Maint. & Constr., Inc.*, 52 F. Supp. 2d 699, 703, 705-06 (M.D. La. 1999) (holding that the Federal Arbitration Act, which provides that "the defendants may, at any time before the trial thereof, remove such action or proceeding . . . [subject to the] procedure for removal of causes otherwise provided by law," is not limited by the thirty-day period under Section 1446).

expressly rejected by other courts.  The *Hill* decision provides the most pointed analysis of the relationship between the Edge Act and the general removal statute.  After considering *Ponce*, the court concluded:

> [T]he court is not convinced that the thirty-day limitation from section 1446 should be incorporated by reference into the removal provisions of section 632.  First, the plaintiffs' argument was considered and rejected by this court in [*Libra Bank*].  Second, the other cases considering the propriety of removal under section 632 have all assumed that the statute authorizes, as its terms suggest, removal at any time prior to trial, without any limitation imported from section 1446.  Finally, the time limit set forth in section 632, "before the trial," would be rendered almost meaningless if the thirty-day limit from section 1446 were incorporated.

804 F. Supp. at 516 (citations omitted).[7]

The approach taken by the court in *Hill* is the only one consistent with basic principles of statutory interpretation.  In addition to providing meaning to the phrase "at any time before trial" in Section 632, it is also the only one giving effect to Congressional intent underlying that language.  Congress knows how to draft a removal statute when it intends removal to be limited to thirty days.  For example, while the general removal statute provides for a thirty day period for the removal of ***civil*** cases, the statutory section on the removal of ***criminal*** cases allows for removal at "any time before trial."  *Compare* 28 U.S.C. § 1446(b) *with* 28 U.S.C. § 1446(c)(1).  Moreover, it is well-established that the language of special removal statutes such as Section 632 trumps that of the general removal statute: "where a special removal statute provides a specific procedure, that procedure, not the procedure for removal of [Section 1446], controls.  Only where section 632 does not provide a specific procedure does one follow the procedure for the removal of cases otherwise provided by law."  *CI Int'l Fuels*, 707 F. Supp. 2d at 1355 (citing

---

[7] Notably, *Ponce*'s conclusion that Section 632 requires unanimous consent of all defendants to the removal has also been rejected by subsequent courts.  For example, in *CI Int'l Fuels, Ltd. v. Helm Bank, S.A.*, the court explicitly adopted the *Hill* rationale to conclude that the unanimity requirement of Section 1446 is inapplicable to Section 632, in light of the latter statute's express language superseding that of Section 1446.  707 F. Supp. 2d 1351, 1354-55 (S.D. Fla. 2010).

*Ponce* and rejecting its application of Section 1446 to removals under the Edge Act). The conscious use of the phrase "at any time before the trial" in Section 632 should thus be dispositive. *See Carcieri v. Salazar*, 555. U.S. 379, 392-93 (2009) ("'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'") (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)).

There have been no substantive proceedings in this action, and the Supplemental Notice is being filed well before trial. *See, e.g., Hill*, 804 F. Supp at 516; *Magel*, 776 F. Supp. at 202 (holding removal valid under Edge Act because "no trial activity had occurred"); *Libra Bank*, 1981 U.S. Dist. LEXIS 16596, at *11 (finding that Section 632 "provides a basis for subject matter jurisdiction here, [and] this court is bound to follow its mandate that removal may be made 'at any time before the trial.'") (quoting 12 U.S.C. § 632). As such, it is timely.

## II.   LEAVE TO FILE A SUPPLEMENTAL NOTICE OF REMOVAL SHOULD BE "FREELY GRANTED" AND IS APPROPRIATE HERE

Supplemental removal petitions are treated like amendments of pleadings, and courts consider motions to amend or supplement a notice of removal under the standards provided by Rule 15 of the Federal Rules of Civil Procedure. *See, e.g.*, *Kingman* v. *Sears, Roebuck & Co.*, 526 F. Supp. 1182, 1185-86 (D. Me. 1981) (applying Rule 15(a) and granting motion to amend a removal petition); *Grow Grp., Inc. v. Jandernoa,* No. 94 Civ. 5679, 1995 WL 60025, at *3 (S.D.N.Y. Feb. 10, 1995) (holding that Rule 15(a) is applicable to removal petitions and granting motion for leave to file amended notice of removal). As such, leave to amend a removal petition shall be "freely granted" in the interests of judicial economy, and is appropriate absent one of the following factors: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies; (4) undue prejudice to the opposing party; and (5) futility. *See San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior,* 236 F.R.D. 491, 496-97 (E.D. Cal. 2006); *Structural Sys., Inc. v. Sulfaro,* 692 F. Supp. 34, 36 (D. Mass. 1988).

Here, the Removing Defendants' decision to seek leave to file a supplemental notice of removal is grounded in strong legal precedent, advances the interests of judicial economy, and

will not pose any undue delay or prejudice to the Bank.   The case is in its infancy, and the Removing Defendants filed the instant motion within thirty days of the recent *AIG* decision and while the Bank's motion for remand is currently pending before this Court.   Judicial efficiency is best served by having ***all*** of the grounds for the exercise of federal jurisdiction before the Court now, prior to a decision on the Bank's remand motion.   Indeed, if a supplemental notice of removal were not permitted and the action thereafter remanded to state court, the Defendants could simply file a new notice of removal then and start the whole process anew.   *See Mattel, Inc. v. Bryant,* 441 F. Supp. 2d 1081, 1088, 1100 (C.D. Cal. 2005) (holding that successive removals are not barred); *Padilla-Morales v. Shell Co. (Puerto Rico) Ltd.,* No. 04 Civ. 2276, 2005 WL 4655134, at *4 (D.P.R. June 29, 2005) (same); *see also Davis v. Life Investors Ins. Co. of Am.*, 214 F. Supp. 2d 691, 694 (S.D. Miss. 2002) (noting that "it would be senseless to deny [the defendant] the opportunity to assert" a newly-arisen basis for removal, "particularly given that if the case were remanded on the sole ground asserted in the removal petition, [the defendant] would then be allowed to remove the case a second time on this new basis").   As such, leave to amend should be granted now to allow this Court to consider whether federal jurisdiction exists under the Edge Act, at the same time it considers whether jurisdiction exists under the Bank's charter or under the "related to" bankruptcy provisions of 28 U.S.C. § 1334. *See Gen. Star Indem. Co. v. Platinum Indem. Ltd. Bank of Am., N.A.*, No. 00 Civ. 4960, 2001 WL 40763, *3 (S.D.N.Y. Jan. 17, 2001) (permitting the defendant to amend its removal notice to include Edge Act grounds, since "removal under the statute is permissible 'at any time before the trial' of the case") (quoting 12 U.S.C. § 632).

## III.   THE EDGE ACT CONFERS ORIGINAL FEDERAL JURISDICTION HERE

Finally, the Removing Defendants have a good faith basis for supplementing their notice of removal to assert jurisdiction under the Edge Act, which would not be futile.[8]   The fact that a

---

[8]  Defendants intend to seek further briefing to support these grounds should Plaintiff challenge removal under the Edge Act.   Section 1446(a) requires that a Notice of Removal contain only "a short and plain statement of the

(Footnote Continued on Next Page.)

number of mortgage loans underlying the Certificates were originated in a territory of the United States (Puerto Rico), coupled with the fact that the majority of the Certificates themselves were securitized, issued, underwritten, and/or sold by subsidiaries of foreign banks and/or involved swap features with foreign counterparties, provides independent grounds for federal jurisdiction here. These international contacts constituted "foreign banking" activities or "foreign financial operations" falling squarely within the Edge Act's purview. 12 U.S.C. § 632.

## A.      Purpose and Scope of the Edge Act

The Edge Act was enacted in 1919, and provides a legal framework for corporations to be organized "for the purpose of engaging in . . . banking or other financial operations in a dependency or insular possession of the United States." Edge Act, ch. 18, 41 Stat. 378 (1919) (codified as amended at 12 U.S.C. §§ 611 *et seq.*). One of the primary purposes of the Edge Act was to allow federally-chartered banks to engage in "foreign business" and to "finance foreign sales" while under the supervision and control of the Federal Reserve Board or other banking regulatory agency. *See* 58 Cong. Rec. 4953-54 (1919) (statements of Sen. Walter Edge).

Under the jurisdictional provisions of the Act:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits. . . .

---

(Footnote Continued from Previous Page.)

grounds for removal" with no verification required. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008); 28 U.S.C. § 1446(a). A trial court is permitted to consider affidavits and other evidence submitted in support of or in opposition to a motion to remand. *See Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 6 (D. Mass. 2001). Defendants reserve the right to submit the necessary factual support, evidence, and affidavits to support the basis for federal jurisdiction under the Edge Act at the appropriate time.

12 U.S.C. § 632.  Courts have interpreted this provision to require that: "(1) the case is civil in nature, (2) one of the parties is a corporation organized under the laws of the United States (*i.e.*, a national bank), and (3) the suit arises out of transactions involving international banking *or* international financial operations (including territorial banking)."  *AIG*, 2011 WL 5022716, at *2 (emphasis added).

"A suit satisfies the jurisdictional prerequisites of Section 632 if *any part of it* arises out of transactions involving international or foreign banking."  *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005) (emphasis in original) (internal quotation marks and citation omitted).  Thus, federal courts "routinely" extend federal jurisdiction on the basis of Section 632 "in cases based on state law causes of action and containing only an incidental connection to banking law," and "even though the international or foreign banking activity was not central to the case."  *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 340 (S.D.N.Y. 1996) (collecting cases).  The First Circuit has taken a particularly broad view, holding that federal jurisdiction may be established under Section 632 in breach of contract suits if the "subject matter" of the disputed contract "arises out of a traditional banking activity."  *See Burgos v. Citibank, N.A.*, 432 F.3d 46, 49-50 (1st Cir. 2005); *Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*, 690 F.2d 1, 5 (1st Cir. 1982); *First Fed. Sav. & Loan Ass'n of P.R. v. Zequiera*, 305 F. Supp. 37, 39-41 (D.P.R. 1969) (dicta).

As a threshold matter, it is clear that the first two prongs of the jurisdictional test are satisfied: this is a civil action in which at least four parties, including the Plaintiff Bank itself, are federally-chartered entities.  The broad language of Section 632 requires only that a federally-chartered bank be "any . . . party" to a suit arising from a transaction involving international banking or other international or foreign financial operations, 12 U.S.C. § 632, and does not require "a perfect match between the particular entity involved in the territorial transaction and the party against whom the claim is brought."  *AIG*, 2011 WL 5022716, at *3 (federally-chartered bank defendant named solely as successor to defendants originally involved in the mortgage origination or securitization process).  *See also Corporacion Venezolana de Fomento*

A/74603305.1

*v. Vintero Sales Corp.*, 629 F.2d 786, 792-93 (2d Cir. 1980) ("*CVF*") (Edge Act applied where federally-chartered bank previously dismissed from action); *Lemgruber*, 385 F. Supp. 2d at 212, 215-16 (Edge Act satisfied where federally-chartered bank plaintiffs were not true parties in interest but were in privity with the party in interest).[9]

**B.      This Action Involves Territorial Banking Activities**

It is also clear that the origination of mortgages in Puerto Rico within the loan pools of the Certificates constitutes "territorial banking activities" under the Act.  According to the First Circuit, "[t]raditional banking activities include, *inter alia*, mortgage loan agreements, foreclosures on such mortgages, loan guarantor agreements, subordination agreements, and suits to recover on defaulted loans." *Burgos*, 432 F.3d at 49.[10]  In particular, mortgage lending has always been considered a traditional "banking activity." *Id.*; *Conjugal Soc'y*, 690 F.2d at 4.  The origination of mortgages in Puerto Rico thus clearly constitutes "banking in a dependency or insular possession of the United States." *AIG*, 2011 WL 5022716, at *2.

In the first application of Section 632 to RMBS litigation, the court in *AIG* held the Edge Act applicable to claims brought under RMBS certificates. *Id*. at *3.  As here, the purchaser of RMBS certificates alleged that the defendant originators, depositors, sponsors and underwriters of mortgage loans had "encouraged borrowers to falsify loan applications, pressured property appraisers to inflate home values, and ignored obvious red flags in the underwriting process," in an effort to sell securitized mortgages to third-party investors. *Id*. at *1 (internal quotation marks and citation omitted).  In denying the plaintiff's motion to remand, the court held, *inter alia*, that (1) the origination of territorial mortgages constituted "banking in a dependency or insular

---

[9] It is equally clear that the federally-chartered entity can be the ***plaintiff***, rather than the ***defendant***, in the action. *See Lemgruber*, 385 F. Supp. 2d. at 212, 214.

[10] Under this definition, the credit swap agreements with foreign banks imbedded in many of the Certificates may be analyzed under either the "banking activities" or "other international foreign operations" prong of the test under the Edge Act.  *See also* section III.C., *infra*.

possession of the United States"; and (2) representations allegedly made in connection the sale of RMBS certificates, and not the underlying mortgages themselves, satisfied the requirement that the claims "involved" territorial or foreign banking. *Id.* at *2-3.

Here, too, the Complaint directly implicates the quality of the mortgage loans underlying the Certificates at issue. Indeed, the allegations invoke the underwriting and lending practices of ***all*** of the originators of the mortgage loans underlying the Certificates that the Bank purchased; the Bank itself acknowledges that its allegations concerning the risk of the mortgage pools underlying the RMBS go "to the heart" of its claims. (Compl. ¶ 13). As such, the Bank's claims, like those in *AIG*, "challenge the quality and value of the RMBS," "directly implicate the mortgage transactions," and "turn, at least in part, on whether the underlying mortgage loans complied with the underwriting standards described in Defendants' offering materials." *See AIG*, 2011 WL 5022716, at *2.[11]

### C.    The Sale of RMBS Securitizations Constituted "International Financial Operations"

Section 632 also confers federal jurisdiction over claims arising from "other international or foreign financial operations." 12 U.S.C. § 632. This provision has been interpreted as a "catch-all" encompassing any "foreign financial operations other than banking [operations]." *See Lloyd's*, 928 F. Supp. at 341.

In particular, it is well-established that the sale of securities to American investors by

---

[11]   The number of territorial loans at issue in either case is enough to satisfy the requirement that transaction "involve" territorial banking; such loans need only constitute a "small portion" of the challenged transaction to establish federal jurisdiction under the Edge Act. *Pinto v. Bank One Corp.*, No. 02 Civ. 8477, 2003 WL 21297300, at *3 (S.D.N.Y. June 3, 2003). *See also Lloyd's*, 928 F. Supp. at 338 ("A suit satisfies the jurisdictional requisites of Section 632 if ***any part of it*** arises out of transactions involving international or foreign banking.") (emphasis added); *CVF*, 629 F.2d at 792-93 (2d Cir. 1980) (same); *AIG*, 2011 WL 5022716, at *2 (there is no recognized "*de minimis* exception to Edge Act Jurisdiction.") That said, this case presents even more compelling facts than those considered in *AIG*. First, the percentage of RMBS backed by territorial mortgages that FHLB purchased here (two out of 115 certificates) is greater than the percentage deemed sufficient in *AIG* (four out of 359 certificates). Second, foreign-affiliated defendants were involved in one form or another with nearly half of the Certificates, and foreign banks served as counterparties to the swap features of many of the RMBS Certificates.

foreign entities for the purpose of raising capital through the issuance of stock, bonds, notes or mortgages is considered an "international financial operation." *See Lemgruber*, 385 F. Supp. 2d at 215 n.13 (citing BLACK'S LAW DICTIONARY 568 (5th ed. 1979)); *Stamm v. Barclays Bank of N.Y.*, 960 F. Supp. 724, 727-28 (S.D.N.Y. 1997); *Racepoint Partners, LLC v. JPMorgan Chase Bank,* No. 06 Civ. 2500, 2006 WL 3044416, at *3 (S.D.N.Y. Oct. 26, 2006) (sale of U.S. corporate bonds to U.S. investors constituted "international financial operations," where bond proceeds were held in foreign rather than in U.S. currency); *Travis v. Nat'l City Bank of N.Y.*, 23 F. Supp. 363, 366-67 (E.D.N.Y. 1938) (bank's role as trustee in the issuance of securities by a German corporation to a U.S. investor constituted "foreign financial operations").

In *Lemgruber*, the plaintiff federally-chartered banks indirectly purchased from the defendant officer/director/shareholder of a Brazilian bank a majority of the stock in the Brazilian bank.  385 F. Supp. 2d at 207-08.  The *Lemgruber* court held that (1) the stock purchase agreement constituted "international financial operations" for purposes of the Edge Act; (2) the defendants' alleged breach of the agreement's warranties via overdrafts and inter-bank wire transfers of the Brazilian bank's funds into the United States, fraudulent loans, and purchases of false certificates of deposit were all "clearly foreign or international banking transactions"; and (3) the plaintiff banks' federally-chartered status satisfied the Edge Act's jurisdictional requirements even though the banks did not purchase the stock directly from the foreign defendant.  *Id*. at 215 & n.13, 225-28.

Here, the Bank alleges that various domestic LLCs with foreign members and the subsidiaries of several foreign banks served as originators, depositors, sponsors, or underwriters in the securitization of almost half of the Certificates as issue.  Moreover, the offering materials for at least 23 Certificates disclosed that various counterparties to the swap features of the RMBS Certificates themselves were foreign banks.  This is more than enough to constitute "other foreign financial operations." *See Lloyd's*, 928 F. Supp. at 339-41 (finding Edge Act jurisdiction where individual U.S. plaintiffs sought to enjoin domestic trustee from accepting directions for disposition of trust funds from Lloyd's in London); *Highland Crusader Offshore Partners, L.P.*

- 13 -

*v. Lifecare Holdings, Inc.*, 627 F. Supp. 2d 730, 734 (N.D. Tex. 2008) (finding Edge Act jurisdiction based on the presence of a foreign lender in the transaction even though "the underlying transaction took place entirely within the United States"); *Clarken v. Citicorp Diners Club, Inc.*, No. 01 Civ. 5123, 2001 WL 1263366, at *1-2 (N.D. Ill. Oct. 22, 2001) (finding Edge Act jurisdiction where U.S. plaintiff disputed currency conversion fees charged by U.S. bank for plaintiff's purchases made in foreign countries); *Pinto*, 2003 WL 21297300, at *6 (finding Edge Act jurisdiction where U.S. plaintiff alleged U.S. defendant banks had allegedly wrongfully advanced credit to plaintiff for illegal use on gambling sites operating outside of the U.S. through credit card transactions made through foreign merchant banks).

## IV.   ALL DEFENDANTS CONSENT TO REMOVAL

Under the Edge Act, notice of removal by one defendant is sufficient to remove a case to federal court:  Section 632 provides "***any defendant*** in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States . . . ."  12 U.S.C. § 632 (emphasis added).   Accordingly, consent to removal from all Defendants in this action is not required, and the Removing Defendants' Supplemental Notice of Removal is sufficient.   *See CI Int'l Fuels*, 707 F. Supp. 2d at 1354 (holding that "rule of unanimity," which generally requires that all defendants consent to removal in federal question cases, does not apply to actions removed under Edge Act, because the Act allows removal by "any defendant").   *Cf. Ponce*, 643 F. Supp. at 426 (unanimity required for removal under Edge Act) (discussed in note 7, *supra*).

Nonetheless, all Defendants in this action have consented to the Supplemental Notice of Removal; these consents are annexed to the Motion for Leave to File Supplemental Notice of Removal as Exhibit B.

## <u>CONCLUSION</u>

Because there is a strong basis for asserting federal jurisdiction under the Edge Act, and because judicial efficiency is best served by this Court having all the potential grounds for such

jurisdiction before it when deciding the Bank's pending motion to remand, this Court should grant the Removing Defendants' Motion for Leave to File Supplemental Notice of Removal.

Respectfully submitted,

BINGHAM McCUTCHEN LLP

/s/  Jacqueline Syrnick
Beth I.Z. Boland (BBO #553654)
Nikki Jean Fisher (BBO #660268)
Jacqueline Syrnick (BBO #676284)
One Federal Street
Boston, Massachusetts 02110
Tel:  (617) 951-8000
Fax:  (617) 951-8736
beth.boland@bingham.com
nikki.fisher@bingham.com
jacqueline.syrnick@bingham.com

Of Counsel:

Kenneth I. Schacter, admitted *pro hac vice*
Theo J. Robins, admitted *pro hac vice*
399 Park Avenue
New York, New York 10022
Tel:  (212) 705-7000
Fax:  (212) 753-5378
kenneth.schacter@bingham.com
theo.robins@bingham.com

*Attorneys for Defendants Bear Stearns Asset Backed Securities I, LLC, EMC Mortgage Corporation, J.P. Morgan Acceptance Corporation I, J.P. Morgan Mortgage Acquisition Corp., J.P. Morgan Securities, LLC (f/k/a Bear, Stearns & Co. Inc. and J.P. Morgan Securities, Inc.), JPMorgan Chase & Co., JPMorgan Securities Holdings, LLC, Structured Asset Mortgage Investments II, Inc., The Bear Stearns Companies, LLC (f/k/a The Bear Stearns Companies Inc.), and WaMu Capital Corp.*

Dated:  November 21, 2011

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 21, 2011.

/s/ Jacqueline Syrnick
Jacqueline Syrnick