UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF BOSTON,<br><br>                Plaintiff,<br>      v.<br><br>ALLY FINANCIAL, INC. F/K/A GMAC LLC; BANC OF AMERICA FUNDING CORPORATION; BANK OF AMERICA CORPORATION; BANK OF AMERICA, NATIONAL ASSOCIATION; BARCLAYS CAPITAL INC.; BCAP LLC; BEAR STEARNS ASSET BACKED SECURITIES I LLC; CAPITAL ONE FINANCIAL CORPORATION; CAPITAL ONE, NATIONAL ASSOCIATION; CHEVY CHASE FUNDING LLC; CITICORP MORTGAGE SECURITIES, INC.; CITIGROUP FINANCIAL PRODUCTS, INC.; CITIGROUP GLOBAL MARKETS INC.; CITIGROUP GLOBAL MARKETS REALTY CORP.; CITIGROUP INC.; CITIGROUP MORTGAGE LOAN TRUST INC.; CITIMORTGAGE, INC.; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE SECURITIES CORP.; CREDIT SUISSE (USA), INC.; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CREDIT SUISSE HOLDINGS (USA), INC.; CREDIT SUISSE SECURITIES (USA) LLC; CWALT, INC.; CWMBS, INC.; DB STRUCTURED PRODUCTS, INC.; DB U.S. FINANCIAL MARKET HOLDING CORPORATION; DEUTSCHE ALT-A SECURITIES, INC.; DEUTSCHE BANK SECURITIES INC.; DLJ MORTGAGE CAPITAL, INC.; EMC MORTGAGE CORPORATION; FITCH, INC.; GMAC MORTGAGE GROUP LLC F/K/A GMAC MORTGAGE GROUP, INC.; | Civil Action No. 11-cv-10952-GAO<br><br><br><br><br>**REPLY BRIEF IN SUPPORT OF REMOVING DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL NOTICE OF REMOVAL**<br><br><br><br>**LEAVE TO FILE GRANTED ON DECEMBER 9, 2011**<br><br><br><br><br><br>*[caption continued on next page]* |

GOLDMAN, SACHS & CO.; IMH ASSETS CORP.; IMPAC FUNDING CORPORATION; IMPAC MORTGAGE HOLDINGS, INC.; IMPAC SECURED ASSETS CORP.; J.P. MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN MORTGAGE ACQUISITION CORP.; J.P. MORGAN SECURITIES LLC F/K/A BEAR, STEARNS & CO. INC. AND J.P. MORGAN SECURITIES INC.; JPMORGAN CHASE & CO.; JPMORGAN SECURITIES HOLDINGS LLC; MERRILL LYNCH & CO., INC.; MERRILL LYNCH MORTGAGE INVESTORS, INC.; MERRILL LYNCH MORTGAGE LENDING, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; MOODY'S CORPORATION; MOODY'S INVESTORS SERVICE, INC.; MORGAN STANLEY; MORGAN STANLEY & CO. INC.; MORGAN STANLEY CAPITAL I INC.; MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC; MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC.; MORTGAGEIT SECURITIES CORP.; MORTGAGEIT, INC.; NOMURA ASSET ACCEPTANCE CORPORATION; NOMURA CREDIT & CAPITAL, INC.; NOMURA HOLDING AMERICA, INC.; NOMURA SECURITIES INTERNATIONAL, INC.; RBS ACCEPTANCE INC. F/K/A GREENWICH CAPITAL ACCEPTANCE, INC.; RBS FINANCIAL PRODUCTS INC. F/K/A GREENWICH CAPITAL FINANCIAL PRODUCTS, INC.; RBS HOLDINGS USA INC. F/K/A GREENWICH CAPITAL HOLDINGS, INC.; RBS SECURITIES INC. F/K/A GREENWICH CAPITAL MARKETS, INC.; RESIDENTIAL ACCREDIT LOANS, INC.; RESIDENTIAL FUNDING COMPANY, LLC F/K/A RESIDENTIAL FUNDING CORPORATION; SANDLER O'NEILL + PARTNERS, L.P.; STANDARD & POOR'S FINANCIAL SERVICES LLC;

*[caption continued on next page]*

STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.; THE BEAR STEARNS COMPANIES LLC F/K/A THE BEAR STEARNS COMPANIES INC.; THE MCGRAW-HILL COMPANIES, INC.; UBS AMERICAS INC.; UBS REAL ESTATE SECURITIES INC.; UBS SECURITIES LLC; WAMU CAPITAL CORP.; WELLS FARGO & COMPANY; WELLS FARGO ASSET SECURITIES CORPORATION; WELLS FARGO BANK, NATIONAL ASSOCIATION; and DEFENDANTS JOHN DOE 1-50,

      Defendants.

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*,
  62 F.3d 1454 (D.C. Cir. 1995) .................................................................................................. 8

*Acme Brick Co. v. Agrupacion Exportadora de Maquinaria Ceramica*,
  855 F. Supp. 163 (N.D. Tex. 1994) .......................................................................................... 5

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
  No. 11 Civ. 6212 (BSJ), 2011 WL 5022716 (S.D.N.Y. Oct. 20, 2011) ................................ 5, 6

*Arancio v. Prudential Ins. Co. of Am.*,
  247 F. Supp. 2d 333 (S.D.N.Y. 2002) ....................................................................................... 4

*Banco de Santander Cent. Hispano v. Consalvi Int'l, Inc.*,
  425 F. Supp. 2d 421 (S.D.N.Y. 2006) ....................................................................................... 3

*Bank of Am. Corp. v. Lemgruber*,
  385 F. Supp. 2d 200 (S.D.N.Y. 2005) .................................................................................. 5, 6

*Bank of New York v. Bank of America*,
  861 F. Supp. 225 (S.D.N.Y. 1994) ........................................................................................... 7

*Bernadin v. Am. Airlines, Inc.*,
  No. 08 CV 1774 (NG)(VVP), 2009 WL 1910964 (E.D.N.Y. July 1, 2009) ............................ 4

*Burgos v. Citibank, N.A.*,
  432 F.3d 46, 50 (1st Cir. 2005) ................................................................................................. 7

*Charter Servs., Inc. v. DL Air, LLC*,
  711 F. Supp. 2d 1298 (S.D. Ala. 2010) .................................................................................. 10

*City of Stockton v. Bank of Am., N.A.*,
  No. C-08-4060 MMC, 2008 WL 4911183 (N.D. Cal. Nov. 13, 2008) ................................. 3, 5

*Clarken v. Citicorp Diners Club, Inc.*,
  No. 01 C 5123, 2001 WL 1263366 (N.D. Ill. Oct. 22, 2001) ................................................ 5, 7

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*,
  629 F.2d 786 (2d Cir. 1980) ..................................................................................................... 6

*Dibidale of La., Inc. v. First Nat'l Bank of Houma*,
  Civ. A. No. 90-4784, 1991 WL 40326 (E.D. La. Mar. 21, 1991) ........................................ 2, 3

*Diebel v. S.B. Trucking Co.*,
  262 F. Supp. 2d 1319 (M.D. Fla. 2003) .................................................................................. 4

*F.D.I.C. v. Keating*,
  12 F.3d 314 (1st Cir. 1993) .................................................................................................... 2

*Hawaii v. Abbott Labs., Inc.*,
  469 F. Supp. 2d 842 (D. Haw. 2006) ..................................................................................... 4

*Heller v. Allied Textile Cos.*,
  276 F. Supp. 2d 175 (D. Me. 2003) ....................................................................................... 4

*Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.*,
  627 F. Supp. 2d 730 (N.D. Tex. May 15, 2008) .................................................................... 7

*Infuturia Global Ltd. v. Sequus Pharm., Inc.*,
  631 F.3d 1133 (9th Cir. 2011) ............................................................................................... 3

*In re Lloyd's Am. Trust Fund Litig.*,
  928 F. Supp. 333 (S.D.N.Y. 1996) ......................................................................................... 7

*Lupo v. Human Affairs Int'l, Inc.*,
  28 F.3d 269 (2d Cir. 1994) ..................................................................................................... 4

*McLaurin v. United States*,
  392 F.3d 776 (5th Cir. 2004) ................................................................................................. 4

*MFP Eagle Highlands, LLC v. Am. Health Network of Ind., LLC*,
  No. 1:07-cv-0424, 2009 WL 77679 (S.D. Ind. Jan. 9, 2009) .............................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  509 F. Supp. 2d 82 (D. Mass. 2007) ...................................................................................... 4

*Pinto v. Bank One Corp.*,
  No. 02 Civ.8477NRB, 2003 WL 21297300 (S.D.N.Y. June 3, 2003) ................................ 5, 7

*Ponce Fed. Bank, FSB v. Instituto Medico del Norte, Inc.*,
  643 F. Supp. 424 (D.P.R. 1986) ............................................................................................ 2

*Rafter v. Stevenson*,
  680 F. Supp. 2d 275 (D. Me. 2010) ....................................................................................... 4

*Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.*,
  No. 10 Civ. 4754 (JGK), 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011) .............................. 6

*Telecredit Service Center v. First National Bank of the Florida Keys*,
  679 F. Supp. 1101 (S.D. Fla. 1988) ....................................................................................... 7

A/74622944.13

*W. Va. ex rel. McGraw v. Minn. Mining & Mfg. Co.*,
   354 F. Supp. 2d 660 (S.D.W. Va. 2005) ................................................................................ 4

*Wyant v. Nat'l R.R. Passenger Corp.*,
   881 F. Supp. 919 (S.D.N.Y. 1995) ........................................................................................ 4

**REGULATIONS, RULES AND STATUTES**

9 U.S.C. § 205 ........................................................................................................................... 3, 5

12 U.S.C. § 1432(a) ....................................................................................................................... 1

12 U.S.C. § 1819(b)(2)(B) ............................................................................................................. 2

12 U.S.C. § 632 ..................................................................................................................... passim

12 C.F.R. § 1267.3(a)(3) ................................................................................................................ 9

28 U.S.C. § 1367 ............................................................................................................................ 5

28. U.S.C. § 1441(a) .................................................................................................................. 2, 3

28 U.S.C. § 1446 ................................................................................................................ 1, 2, 3, 4

28 U.S.C. § 2679(d)(2) .................................................................................................................. 4

International Banking Act if 1978, Pub. L. No. 95-369, 92 Stat. 607 ......................................... 10

**OTHER AUTHORITIES**

ADAM B. ASHCRAFT & TIL SCHUERMANN, FED. RESERVE BANK OF N.Y., STAFF REPORTS,
   UNDERSTANDING THE SECURITIZATION OF SUBPRIME MORTGAGE CREDIT (2008) ................ 8, 9

CHARLES ALAN WRIGHT & ARTHUR M. MILLER, FEDERAL PRACTICE AND PROCEDURE §
   3730 (4th ed. 2011) ............................................................................................................... 2

CREDIT PROD. SPECIAL REPORT, FITCH RATINGS, SYNTHETIC OVERVIEW FOR CMBS
   INVESTORS (2005) .................................................................................................................. 9

*Investment Basics: What Are Interest Rate Swaps And How Do They Work?* PIMCO (Jan.
   2008) ..................................................................................................................................... 9

Steven M. Davidoff, *Section 632: An Expanded Basis of Federal Jurisdiction for National
   Banks*, 123 BANKING L. J. 687 (2006) .................................................................................. 8

Thomas J. McCormack, Robert Sidorsky, & Dorollo Nixon, Jr., *Edge Act Enables
   National Bank to Invoke Federal Jurisdiction over Suits Involving International
   Banking of Financial Operations*, 124 BANKING L.J. 907 (2007) .......................................... 8

W. SCOTT FRAME, FED. RESERVE BANK OF ATL., WORKING PAPER SERIES, THE 2008
    FEDERAL INTERVENTION TO STABILIZE FANNIE MAE AND FREDDIE MAC (2009) ......................9

- 1 -

**PRELIMINARY STATEMENT**

For a second time, Plaintiff Federal Home Loan Bank of Boston ("FHLB," or "the Bank"), when faced with inconvenient statutory language, has asked this Court to ignore the plain language of the governing statute. First, the Bank asked this Court to ignore the "sue or be sued" clause in the Bank's congressional charter, 12 U.S.C. § 1432(a). Now, the Bank again implores this Court to disregard the explicit language of the jurisdictional provisions of the Edge Act, 12 U.S.C. § 632 ("Section 632") allowing for removal "at any time before the trial." In order to avoid the natural conclusion that these two statutes both provide for federal jurisdiction here, the Bank relies on a series of outdated, rejected, or irrelevant cases. And when confronted with the sheer mass of cases directly contradicting its position, the Bank waves them off, saying they were "incorrect," not "meaningful," "of limited persuasive value," "erroneous interpret[ations]," or just plain "erroneous." Yet the only thing erroneous here is the Bank's attempt to circumvent the plain import of its federal charter and of the Edge Act. This Court should allow the Removing Defendants to supplement their Notice of Removal and to add the Edge Act as another basis for federal jurisdiction.

**ARGUMENT**

**I.   THE THIRTY-DAY REMOVAL PERIOD IN 28 U.S.C. § 1446 DOES NOT BAR THE FILING OF A SUPPLEMENTAL NOTICE OF REMOVAL NOW**

The Bank argues that the provision in the Edge Act allowing for removal "any time before the trial" does not mean what it says. Instead, the Bank says the provision simply provides an "outer limit" to the thirty-day removal period set forth by the general removal statute, 28 U.S.C. § 1446 ("Section 1446"). Pl.'s Opp'n to Defs.' Mot. for Leave to File Supp'l Notice of Removal (Dkt. No. 158) ("Pl. Opp'n") 9-10. This makes no sense. If Congress intended the phrase "any time before the trial" to serve as a mere "outer limit" for removal under the Edge Act, it would have drafted the Act to say so: indeed, Section 1446 itself contains both an "inner limit" (removal within thirty days after service of the complaint or other paper from which federal jurisdiction may first be ascertained) and an "outer limit" (for diversity cases only, one year after commencement of

the action).  The Edge Act, however, contains only one time limit:  "any time before the trial."  To suggest that this plain language nonetheless does not allow a litigant to remove at any time before trial willfully ignores that clear directive.

The Bank cites no authority to support its novel "outer limit" theory for the simple reason that there is none.  The Removing Defendants are aware of no court having read a statute containing a time frame for removal that is longer than that provided by Section 1446 as simply providing an "outer limit" for removal; rather, courts treat a specified time frame contained in a special removal statute (here, "at any time before the trial") as correlating to the thirty-day "inner limit" of Section 1446.  *See, e.g.*, *F.D.I.C. v. Keating*, 12 F.3d 314, 316 (1st Cir. 1993) (drawing a parallel to Section 632 and holding that removal after thirty days was permissible because such removal was within the ninety-day period contained in 12 U.S.C. § 1819(b)(2)(B), the special removal statute); *see also* Mem. of Law in Supp. of Removing Defs.' Mot. for Leave to File Supp'l Notice of Removal (Dkt. No. 155) ("Defs.' Mem.") 5-8.

When given a choice between application of the time period contained in a special removal statute (here, Section 632) and that in the general removal statute (Section 1446), the specific jurisdictional statute wins.  14C CHARLES ALAN WRIGHT & ARTHUR M. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3730 (4th ed. 2011) (noting that separate procedural requirements apply "when a case is removed pursuant to any of a number of special removal statutes"); *see* Defs.' Mem. 5-7.  This is particularly true where, as here, Section 1441 itself provides that it applies "[e]xcept as otherwise expressly provided by Act of Congress."  28. U.S.C. § 1441(a).

Nor does the Edge Act's directive to follow procedures "otherwise provided by law" permit this Court to simply ignore the phrase "at any time before the trial" altogether, as the Bank argues it should.  The Bank contends that the cases are evenly split, and that two decisions – *Ponce Federal Bank, FSB v. Instituto Medico del Norte, Inc.*, 643 F. Supp. 424 (D.P.R. 1986), and *Dibidale of Louisiana, Inc. v. First National Bank of Houma*, Civ. A. No. 90-4784, 1991 WL 40326 (E.D. La. Mar. 21, 1991) – support its contention on this point, while two others support the Removing Defendants' position.  *See* Pl. Opp'n 8-10.  Putting aside the fact that the Bank's tally

- 2 -

selectively discounts a slew of cases contrary to its position,[1] any supposed "tie" would be illusory: *Ponce* has been explicitly and repeatedly rejected in the Edge Act context, Defs.' Mem. 5-7, and its rationale has been rejected in many other cases interpreting statutes with similar language. *Id.* at 5 & n.6; *see also Banco de Santander Cent. Hispano v. Consalvi Int'l, Inc.*, 425 F. Supp. 2d 421, 426-27 (S.D.N.Y. 2006) (interpreting the provisions of 9 U.S.C. § 205, which also permits removal "at any time before the trial" and specifies that "the procedure for removal of causes otherwise provided by law shall apply," to control over the provisions of Section 1446); *Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1139 (9th Cir. 2011) ("[t]he meaning of [§ 205] is clear: a defendant may remove a qualifying state court action to federal court at any time before the claims raised in the state court action have been adjudicated"). Even one of the Bank's own cited cases – *City of Stockton v. Bank of America, N.A.*, No. C-08-4060 MMC, 2008 WL 4911183 (N.D. Cal. Nov. 13, 2008) – rejects *Ponce*. *Id.* at *3 n.2 ("Stockton's reliance on [*Ponce*] is unavailing, for the reason that the district court's analysis therein was dependent on an erroneous assumption [regarding the scope of 28 U.S.C. § 1441(a)]."). At bottom, the Bank's interpretation simply cannot be squared with the language of the Edge Act. Accordingly, Section 1446's thirty-day limit is not a bar to the supplemental notice of removal here because Section 632 allows the notice to be filed at "any time before the trial."

## II.   LEAVE TO FILE SUPPLEMENTAL NOTICE SATISFIES PROCEDURAL REQUIREMENTS

The Bank next argues that the Removing Defendants' motion must fail because Section 632 was not raised as a basis of federal jurisdiction when the case was originally removed. Pl. Opp'n 4-7. However, all of the cases on which the Bank relies are easily distinguishable: they do not involve amendments based on separate special removal statutes that allow removal after the

---

[1] As noted at length in Defs' Mem. (at 5-7) and here, a host of courts have held that the phrase "any time before the trial" in a special removal statute trumps the 30-day period found in the general removal statute. By the same token, one of the two cases on which the Bank relies adds nothing to the rationale in *Ponce* but merely quotes it without analysis. *See Dibadale*, 1991 WL 40326, at *1.

expiration of the Section 1446 thirty-day period.[2] In those cases, courts understandably rejected the defendants' attempts to amend the notices of removal after the thirty-day window closed. Here, however, Section 632 provides an entirely separate basis and time frame in which to effectuate a removal – a period that has not expired.

Permitting the Removing Defendants to supplement their notice of removal at this early stage of the litigation – while the motion to remand is still pending – is wholly consistent with the liberal standards of Rule 15 of the Federal Rules of Civil Procedure. The Bank concedes that Rule 15 governs the analysis, but nonetheless argues that the present motion should be denied because allowing the amendment would create "undue delay and prejudice." Pl. Opp'n 11-15. The Bank has cited no cognizable prejudice that offsets the undeniable judicial efficiency gained by allowing the court to consider all the grounds for asserting federal jurisdiction during the pendency of its motion to remand, rather than waiting for the Removing Defendants to re-remove under the Edge Act in the event of remand.[3] Indeed, courts have allowed removal under similar statutes *years* after the original suit was filed. *See, e.g.*, *McLaurin v. United States*, 392 F.3d 776, 779-81 (5th Cir. 2004) (affirming removal under 28 U.S.C. § 2679(d)(2) more than six years after the suit was filed

---

[2] The Bank cites to a litany of cases applying Section 1446's thirty-day limit. However, none of these cases involved a removal based on a special removal statute with a longer window for removal than that provided in Section 1446. *See Arancio v. Prudential Ins. Co. of Am.*, 247 F. Supp. 2d 333, 336-37 (S.D.N.Y. 2002) (seeking to add diversity grounds as a basis for federal jurisdiction); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 273-74 (2d Cir. 1994) (same); *Heller v. Allied Textile Cos.*, 276 F. Supp. 2d 175, 179 (D. Me. 2003) (same); *W. Va. ex rel. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 670-71 (S.D.W. Va. 2005) (seeking to "amplify the basis" for diversity jurisdiction); *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 925 (S.D.N.Y. 1995) (seeking to add federal question grounds as a basis for federal jurisdiction); *Rafter v. Stevenson*, 680 F. Supp. 2d 275, 277-78 (D. Me. 2010) (same); *Bernadin v. Am. Airlines, Inc.*, No. 08 CV 1774 (NG)(VVP), 2009 WL 1910964, at *2-3 (E.D.N.Y. July 1, 2009) (same); *Diebel v. S.B. Trucking Co.*, 262 F. Supp. 2d 1319, 1329 (M.D. Fla. 2003) (seeking to amend a notice of removal made solely on diversity grounds to allege unanimous consent); *In re Pharm. Indus. Average Wholesale Price Litig.*, 509 F. Supp. 2d 82, 88-89 (D. Mass. 2007) (seeking to amend a notice of removal for claims under the federal False Claims Act, which does not contain language governing the timeliness of removal); *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 846-47 (D. Haw. 2006) (same).

[3] The Bank incorrectly argues, again without authority, that the Removing Defendants would not be able to file successive notices of removal. *See* Pl. Opp'n 13. Because the Edge Act – unlike the statutes in the cases cited by the Bank – allows removal "at any time before the trial," the Removing Defendants would indeed be able to do so. Defs.' Mem. 8.

- 5 -

in state court); *Acme Brick Co. v. Agrupacion Exportadora de Maquinaria Ceramica*, 855 F. Supp. 163, 164, 166 (N.D. Tex. 1994) (allowing removal under 9 U.S.C. § 205 more than three years after the suit was filed in state court).

This case is still in its infancy. The Removing Defendants did not take a "wait and see" approach, but removed this case immediately after the filing of the complaint, and now seek to supplement the grounds for the removal while the issue is still pending before this Court. Interests of judicial efficiency mandate that the Removing Defendants be allowed to do so.

### III.    REMOVAL UNDER THE EDGE ACT IS NOT FUTILE

The Bank finally argues that the Court should deny leave to add the Edge Act as an additional basis for jurisdiction on grounds that doing so would be futile. Because all of the jurisdictional elements of the Edge Act are satisfied here, the amendment should be allowed.

The Bank argues that the Edge Act does not apply because some of its causes of action against the Removing Defendants rest on statutory, and not common law, grounds. Pl. Opp'n 15-16. Federal jurisdiction under Section 632 is routinely found, however, in cases (including some cited by the Bank itself) involving statutory claims. *See, e.g.*, *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6212 (BSJ), 2011 WL 5022716, at *1 (S.D.N.Y. Oct. 20, 2011) ("*AIG*") (finding Edge Act jurisdiction over claims brought under the Securities Act of 1933); *City of Stockton*, 2008 WL 4911183, at *2 (claims brought under the California Cartwright Act); *Clarken v. Citicorp Diners Club, Inc.*, No. 01 C 5123, 2001 WL 1263366, at *1-2 (N.D. Ill. Oct. 22, 2001) (claims brought under the Illinois Consumer Fraud Act); *Pinto v. Bank One Corp.*, No. 02 Civ.8477NRB, 2003 WL 21297300, at *1-2 (S.D.N.Y. June 3, 2003) (claims brought under New York State gambling statutes). The Bank cites no case – and the Removing Defendants are not aware of any – holding that the Edge Act does not confer jurisdiction over statutory claims.[4]

---

[4] Even if the Bank's theory regarding the limited scope of Section 632 were correct – and it is not – supplemental jurisdiction could still be conferred over the Bank's statutory claims under 28 U.S.C. § 1367, since they are so related to the Bank's common law claims that they form part of the same "case or controversy." *See Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 212, 216-17 (S.D.N.Y. 2005) (holding that, after finding jurisdiction

(Footnote Continued on Next Page.)

The Bank, citing *Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL 4056306, at *4 (S.D.N.Y. Sept. 13, 2011), next argues that its claims lie outside the Edge Act because they do not "involve[] a banking transaction between the Bank and any foreign entity." Pl. Opp'n 16. Again, the Bank ignores the express language of the statute, which requires only that a federally-chartered entity (such as the Bank) be "any party" to the suit. *See* 12 U.S.C. § 632. Moreover, *Societe* is easily distinguishable: there, unlike here, the federally-chartered bank had no role whatsoever in any transactions at issue. *See Societe,* 2011 WL 4056306, at *4. Indeed, among the dozens of courts interpreting Section 632, *Societe* stands alone in suggesting there need be "a banking arrangement between a federally chartered bank and a foreign party," rather than requiring only that the bank be "any party" to the suit. *See, e.g.*, *AIG*, 2011 WL 5022716, at* 3 (federally-chartered bank named as a party by virtue of the fact it later acquired the entity that originated two territorial mortgages, although it was not involved in the mortgage origination or securitization process); *Lemgruber*, 385 F. Supp. at 212 (finding jurisdiction under Section 632 even where plaintiff federally-chartered bank was not a party to the disputed banking transaction); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 792-93 (2d Cir. 1980) (finding jurisdiction under Section 632 even though federally-chartered bank had already been dismissed from the action, and where bank merely provided letter of credit drawn on by New York ship seller for the benefit of foreign purchaser).

Lastly, the Bank suggests the various international banking activities and financial operations at play here are "purely domestic securities purchases," and thus not covered under the Edge Act. Pl. Opp'n 16-20. In so doing, the Bank applies the wrong standard and also misapprehends the global nature of the international banking activities underlying the 115 RMBS certificates at issue in this matter.

---

(Footnote Continued from Previous Page.)

under Section 632, the court may exercise supplemental jurisdiction over claims not covered by Section 632).

As a threshold matter, the Bank relies heavily on two cases – *Telecredit Service Center v. First National Bank of the Florida Keys*, 679 F. Supp. 1101 (S.D. Fla. 1988), and *Bank of New York v. Bank of America*, 861 F. Supp. 225 (S.D.N.Y. 1994) – to suggest that the Bank's claims must be "integrally tied to [international] banking activity." Pl. Opp'n 17. This standard, however, has been soundly rejected in subsequent cases (including those in the First Circuit) as inconsistent with the plain language and purpose of Section 632.[5] Instead, the current and majority view requires merely an "incidental connection" to banking activities. *See, e.g.*, *Lloyd's*, 928 F. Supp. at 340; Defs.' Mem. 10. While the Bank strives mightily to distinguish this long line of cases,[6] their broad interpretation of the Act is wholly consistent with Congress's intent:

> . . . [T]he broader reading adopted in the Lloyd's Cases . . . is in greater harmony with the Edge and Glass-Steagall Acts' general statutory intent: to provide a national and regulatory framework for the efficient conduct of national and international and foreign banking and financial operations. It also comports in larger measure with today's reality of increasing globalization and more frequent and complex international and foreign transactions. A federal forum established by Section 632 provides the appropriate apparatus to adjudicate disputes arising at a global level and a measure of uniform federal "common law" by which to measure future conduct. The alternative – piecemeal adjudication in the fifty states – will simply not produce the quality of judicial supervision and access presumably desired by Congress in the enactment of Section 632.

---

[5] *See, e.g.*, *Burgos v. Citibank, N.A.*, 432 F.3d 46, 49 n.2, 50 (1st Cir. 2005) (finding *Telecredit* inapplicable, and noting that "the phrase 'arising out of' is notoriously . . . broad") (citation omitted); *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 340 (S.D.N.Y. 1996) (citing *Conjugal Soc'y Composed of Juvenal Rosa v. Chicago Title Ins. Co.*, 690 F.2d 1, 5 (1st Cir. 1982)) (criticizing *Bank of New York* as "inconsistent with the text of Section 632 and with other federal court decisions that have routinely applied Section 632 . . . [to cases] containing only an incidental connection to banking law"); *Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.,* 627 F. Supp. 2d 730, 737 (N.D. Tex. May 15, 2008) (*Telecredit* and *Bank of New York* "offer a constricted interpretation of Section 632 that stands at odds with . . . the bulk of case law interpreting Section 632 . . . [and] with the statute itself.") (citation omitted); *Pinto*, 2003 WL 21297300, at *3 n.5, *5 & n.6 (noting courts have "questioned whether *Bank of New York* is truly consistent with the text of the Edge Act or with the case law interpreting it"); *Clarken*, 2001 WL 1263366, at *2 (distinguishing *Telecredit* and *Bank of New York* as applicable only to cases solely concerning contract issues).

[6] The degree to which the case law contradicts the Bank's position on this and other issues is perhaps best illustrated by the number of times the Bank resorts to saying that the leading authorities are, in its view, "incorrect" (Pl. Opp'n 9, 12, 13 n.12), "erroneous" (*id.* at 16 n.13, 19 & n.18, 20), "[without] meaningful analysis" (*id.* at 9), "of limited persuasive value" (*id.)*, and "unpersuasive" (*id.* at 19 n.18); or that the authorities "mischaracterize" other judicial decisions in order to reach conclusions with which the Bank disagrees. (*Id.* at 19 n.19).

A/74622944.13

Steven M. Davidoff, *Section 632: An Expanded Basis of Federal Jurisdiction for National Banks*, 123 BANKING L. J. 687, 699 (2006).[7]

The connection between the international banking/financial service activities and the Bank's claims here – whether "incidental" or "integral" – has been amply satisfied. First, the eight Puerto Rican loans were all originated through mortgage originators at their offices located in Puerto Rico itself, and most of the mortgages secured primary residences purchased by Puerto Rican residents. Plainly, these loans implicate banking activities in a foreign territory. *See* Defs.' Mem. 11 (describing the foreign banking activities).

Second, the foreign bank counterparty swap features in at least 25[8] of the certificates are integral to the financial risks associated with those certificates. The credit rating of a specific tranche within an offering directly correlates to the amount of credit enhancement available for the given tranche. *See* ADAM B. ASHCRAFT & TIL SCHUERMANN, FED. RESERVE BANK OF N.Y., STAFF REPORTS, UNDERSTANDING THE SECURITIZATION OF SUBPRIME MORTGAGE CREDIT, at iii (2008). These credit enhancements mitigate the risks associated with RMBS investments, such as default payments or other risks. *See id.* at 29 (listing various structural features utilized in RMBS deals to protect investors from losses on the underlying mortgage loans, including subordination, excess spread, shifting interest, performance triggers, and interest rate swaps). One such risk is that over the life of the trust, the trust will be exposed to interest rate increases which would cause the cost of funding to increase faster than the interest payments received on the mortgages. *See id.* at 33. Through an interest rate swap agreement or other similar swaps, a third-party agrees to

---

[7] *See also A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1462 (D.C. Cir. 1995) (noting that Section 632 encourages international and territorial trade by providing potential litigants with uniformity of federal law); Thomas J. McCormack, Robert Sidorsky, & Dorollo Nixon, Jr., *Edge Act Enables National Bank to Invoke Federal Jurisdiction over Suits Involving International Banking of Financial Operations*, 124 BANKING L.J. 907, 908 (2007) (noting that Section 632 guarantees a "higher level of judicial consideration" at the national level and a uniform application of federal banking law to nationally-chartered banks) (citation omitted).

[8] Since the filing of their opening brief, the Removing Defendants have identified at least two additional offerings which disclose a swap feature with a foreign counterparty in the offering documents; there may be others as well.

accept a sequence of fixed payments in return for promising to send a sequence of adjustable rate payments, thus mitigating the risk of interest rate increases. *See id.* Therefore it is not only the swap agreement itself, but also the financial wherewithal of the ***counterparty*** to the swap agreement, which may play a part in the credit rating of each tranche within any given offering.[9] The existence of the swap agreements with foreign swap counterparties – and the identity of the foreign counterparties themselves – thus may have factored into the AAA ratings of the certificates bought by the Bank at issue here; and the Bank, in turn, is statutorily-prohibited from investing in any instruments with ratings lower than AAA. *See* 12 C.F.R. § 1267.3(a)(3).

The market for swaps is a global one in which swaps are offered and purchased through global trading desks. Notably, the London Interbank Offered Rate (LIBOR) typically serves as the basis for the calculations of the interest rates of the offered certificates themselves, as well as the swaps against which those interest rates are hedged. That some of the swap counterparties are domestic, rather than foreign, is simply a function of the fact that a broad mix of domestic and foreign players all compete against each other in this space.

Given the global nature of the marketplace underlying residential home loan securitizations, it is not surprising that almost one-third of the Defendants in this action are subsidiaries of or are otherwise affiliated with foreign banks, and that these Defendants are involved in the origination, securitization, underwriting, and/or sale of almost half of the

---

[9] *Investment Basics: What Are Interest Rate Swaps And How Do They Work?* PIMCO (Jan. 2008), http://www.pimco.com/EN/Education/Pages/InterestRateSwapsBasics1-08.aspx (noting that interest rate swaps are subject to interest rate risks and credit risk. By designating swap counterparties with high ratings, "double A or above," the credit risk associated with interest swaps is "very low."); *see also* CREDIT PROD. SPECIAL REPORT, FITCH RATINGS, SYNTHETIC OVERVIEW FOR CMBS INVESTORS 3 (2005) (noting that in the context of CMBS transactions, "the swap counterparty must carry minimum ratings dependant on the highest rated funded note. If the [swap counterparty's] rating falls below the minimum rating requirement, the swap counterparty must either replace itself with a suitable swap counterparty, seek a guarantor, or post collateral to cover potential loss upon its default, or the notes may be downgraded."); W. SCOTT FRAME, FED. RESERVE BANK OF ATL., WORKING PAPER SERIES, THE 2008 FEDERAL INTERVENTION TO STABILIZE FANNIE MAE AND FREDDIE MAC 5-7 (2009) (noting that because government sponsored entities ("GSEs") acted as swap counterparties, it created the perception that the federal government implicitly guaranteed the GSE's financial obligations and thus allowed them to operate with significant borrowing advantages that were "better than AAA").

certificates purchased by the Bank. *See* Appendix A.[10] And, it is precisely for this reason that the Edge Act provides a ***federal*** framework for judicial resolution of claims, rather than piecemeal adjudication in the fifty states, involving these national and international banking and financial operations.[11] The Bank fails to grapple with this fundamental principle underlying the Act, and thereby underestimates the extent of its reach over the RMBS certificates at issue here.

## CONCLUSION

For the reasons stated above and the reasons stated in the Memorandum of Law in Support of the Removing Defendants' Motion for Leave to File Supplemental Notice of Removal, this Court should grant the Removing Defendants' Motion for Leave to File Supplemental Notice of Removal.

---

[10] While the Bank suggests that this somehow may make such foreign banks liable for the actions of their subsidiaries, *see* Pl. Opp'n 16 n.14, it does not. The test for determining federal jurisdiction under the Edge Act – like that for determining federal jurisdiction on other grounds – is set at the federal level, and is entirely separate from state law standards for piercing the corporate veil to establish liability. *See, e.g., Charter Servs., Inc. v. DL Air, LLC*, 711 F. Supp. 2d 1298, 1299, 1310 (S.D. Ala. 2010) (considering the citizenship of the members of the defendant LLC for purposes of diversity jurisdiction, but holding that plaintiff could not pierce the corporate veil to assert liability over LLC members); *MFP Eagle Highlands, LLC v. Am. Health Network of Ind., LLC*, No. 1:07-cv-0424, 2009 WL 77679, at *1, *11 (S.D. Ind. Jan. 9, 2009) (same). In any event, the cases cited by Plaintiff on this score stand merely for the uncontroversial position that the vicarious liability of a foreign corporate parent may be *sufficient* to invoke Edge Act jurisdiction – not that it is ***necessary***.

[11] This interest in applying uniform federal standards to increasingly globalized banking operations is also reflected in the International Banking Act of 1978, Pub. L. No. 95-369, 92 Stat. 607 (codified at 12 U.S.C. § 3106) (extending the regulatory reach of the Bank Holding Company Act of 1956 to "(1) any foreign bank that maintains a branch or agency in a State, (2) any foreign bank or foreign company controlling a foreign bank that controls a commercial lending company organized under State law, and (3) any company of which any foreign bank or company referred to in (1) and (2) is a subsidiary").

Respectfully submitted,

BINGHAM McCUTCHEN LLP

/s/  Jacqueline Syrnick
Beth I.Z. Boland (BBO #553654)
Nikki Jean Fisher (BBO #660268)
Jacqueline Syrnick (BBO #676284)
One Federal Street
Boston, Massachusetts 02110
Tel:  (617) 951-8000
Fax:  (617) 951-8736
beth.boland@bingham.com
nikki.fisher@bingham.com
jacqueline.syrnick@bingham.com

Of Counsel:

Kenneth I. Schacter, admitted *pro hac vice*
Theo J. Robins, admitted *pro hac vice*
399 Park Avenue
New York, New York 10022
Tel:  (212) 705-7000
Fax:  (212) 753-5378
kenneth.schacter@bingham.com
theo.robins@bingham.com

*Attorneys for Defendants Bear Stearns Asset Backed Securities I, LLC, EMC Mortgage Corporation, J.P. Morgan Acceptance Corporation I, J.P. Morgan Mortgage Acquisition Corp., J.P. Morgan Securities, LLC (f/k/a Bear, Stearns & Co. Inc. and J.P. Morgan Securities, Inc.), JPMorgan Chase & Co., JPMorgan Securities Holdings, LLC, Structured Asset Mortgage Investments II, Inc., The Bear Stearns Companies, LLC (f/k/a The Bear Stearns Companies Inc.), and WaMu Capital Corp.*

Dated:  December 16, 2011

- 12 -

## CERTIFICATE OF SERVICE

      I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that copies will be sent via electronic mail to those indicated as non registered participants on December 16, 2011.

      /s/ Jacqueline Syrnick
      Jacqueline Syrnick