UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEDERAL HOME LOAN BANK OF
BOSTON,
        Plaintiff,

v.

ALLY FINANCIAL, INC., et al.
        Defendants.

Civil Action No.
1:11-cv-10952-GAO

## REPLY MEMORANDUM OF CAPITAL ONE DEFENDANTS
## IN SUPPORT OF MOTION TO DISMISS

The Capital One Defendants submit this reply in support of their individual motion to dismiss the Amended Complaint filed by FHLB.

### ARGUMENT

The Capital One Defendants filed a motion to dismiss the Amended Complaint in this case because FHLB failed to allege any facts to support the claim that the Private Placement Memorandums by which securities were offered to FHLB contained material misrepresentations. The memorandum in support of the motion pointed out that there were no specific facts alleged to support the idea that any of the loans in the three Chevy Chase trusts at issue in this case were improperly underwritten.

The totality of FHLB's response to the Capital One Defendants' motion is found at pages 59-61 of the Opposition Memorandum ("Opp."). Remarkably, nowhere in these two and one half pages is there any rebuttal to the Capital One Defendants' argument. FHLB was unable to point to any place in the hefty Amended Complaint where there is a fact alleged showing that the loans in the Chevy Chase trusts were improperly underwritten. FHLB erroneously asserts that

paragraph 868 of the Amended Complaint "specifically address[es]" Chevy Chase's alleged violations of underwriting guidelines. Opp. at 60. In fact, the paragraph does not mention Chevy Chase at all. FHLB is apparently confused by its own reference to "Chase Home Finance" in paragraph 868. Chase Home Finance is a JP Morgan Chase entity (AC, ¶ 550) and in no way related to Chevy Chase Bank or Capital One.

Because there are no facts to support the claims against the Capital One Defendants, FHLB resorts to some truly remarkable arguments.

**FHLB's Argument No. 1: The hundreds of pages of allegations that do not mention the Capital One Defendants actually support claims against the Capital One Defendants. (Opposition, p. 59)**

FHLB has apparently overlooked all of the case law that requires a plaintiff asserting securities law violations to allege facts showing that the defendant being sued actually made some material misrepresentations of fact. FHLB may be the first plaintiff to actually allege in federal court that, because a complaint alleges that XYZ Corporation made a misrepresentation, it is "plausible" to infer that ABC Corporation made similar misrepresentations, even when there are no facts alleged regarding ABC Corporation.

**FHLB Argument No. 2: The allegation that there were improper assignments of certain unidentified mortgages and promissory notes in loan files <u>in non-Chevy Chase trusts</u> supports the idea that the Chevy Chase trusts must have had mortgages and promissory notes that were improperly assigned. (Opposition, p. 59)**

There is no factual allegation anywhere in the Amended Complaint that a single mortgage or promissory note was improperly assigned in the Chevy Chase trusts. There is no allegation that anyone has ever encountered any difficulty enforcing a promissory note given in connection with any loan in the Chevy Chase trusts. There is no allegation that anyone has ever encountered any difficulty in foreclosing on any home loan in any of the three Chevy Chase trusts for any reason, including any problem with an assignment.

**FHLB Argument No. 3:** The alleged "30 percent delinquency rate certainly supports a plausible inference that Chevy Chase abandoned its underwriting criteria." (Opposition, p. 59)

Because it has no actual evidence that loans in the Chevy Chase trusts were originated in violation of underwriting guidelines, FHLB asks the Court to draw a "plausible inference" from certain data included in the Amended Complaint regarding loan performance. Amended Complaint, ¶ 848 (Chart, pages 335-340). In pointing to delinquencies in loans in the Chevy Chase trusts, FHLB apparently overlooked the fact that the loans at issue in this case were originated in the 2006-2007 time period. Shortly after these loans were originated, something rather unexpected happened: a worldwide financial crisis. A consequence of the financial crisis was that unemployment in the U.S. spiked to over 10%. It is "plausible" to infer that some of the millions of people who suddenly lost their jobs had mortgage loans. And it is further "plausible" to infer that because they lost their jobs they were unable to pay those loans as agreed. These are, of course, not actually inferences but rather well-established facts confirmed by the Federal Reserve Bank of Boston. Christopher L. Foote, Kristopher S. Gerardi & Paul S. Willen, "Why Did So Many People Make So Many Ex Post Bad Decisions? The Causes of the Foreclosure Crisis," Public Policy Discussion Paper No. 12-2, at 23 n.31, 39 (Fed. Res. Bank of Boston, 7/20/12) ("Foote").[1]

And something else happened. The prices of homes plummeted, relentlessly and for years, such that millions of homeowners found themselves owing more on their home loans than their homes were worth. It is "plausible" to infer that many of these homeowners (even the ones who were not suddenly unemployed) made the strategic choice to walk away from their

---

[1] "Underwater owners who lose their jobs or suffer some other adverse life event are unable to sell their homes for enough to pay off their loans. Foreclosure is the only possible outcome in this case." Available at: http://www.bostonfed.org/economic/ppdp/index.htm (accessed 2/24/13).

mortgage obligations. Again, this is not actually an inference, but rather a well-established fact. *Id.* at 23 n.31, 39.[2]

Finally, even the chart supplied by FHLB undermines the "plausible inference" for which it argues. The chart shows an average "delinquency rate" in the three Chevy Chase trusts of **29.57** percent, while the average delinquency rate for all the trusts in the case is **40.77** percent. AC, ¶ 848 at 336, 340. Is the plausible inference to be drawn from the juxtaposition of those two numbers that "Chevy Chase abandoned its underwriting guidelines" or is it precisely the opposite—that Chevy Chase appropriately underwrote the loans, given how they held up through the financial crisis?

**FHLB Argument No. 4: The "confidential source" (CS-40) supplies the missing facts needed to sustain the Amended Complaint. (Opposition, p. 60)**

FHLB relies on a single unnamed and obviously low-level former employee of a company called "B.F. Saul Mortgage Co." (formerly a subsidiary of Chevy Chase) who has a few unflattering things to say about his former employer. There is just one problem. There is no allegation that CS-40 worked at B.F. Saul Mortgage Co. during the time period that the loans were originated that ultimately went into the Chevy Chase trusts. In short, his testimony does not rise to the level of that which sustained the complaint in *New Jersey Carpenters v. Royal Bank of Scotland*, No. 12-1707-cv, 2013 WL 765178 (2d Cir. March 1, 2013).[3] There the testimony of seven former high-level employees, from across the nation, who had first-hand knowledge of the relevant underwriting practices and were employed when 90% of the loans in that case were originated, contradicted actual statements in a Prospectus. *Id.* at *5-6, 11. The

---

[2] "Falling prices make it more likely that a homeowner will have a negative equity, and economic theory predicts that "underwater" owners will default more often. This prediction receives a great deal of support in empirical default models, so analysts knew that defaults would rise if prices declined." Foote at 39.

[3] This decision reversed in part, vacated in part and remanded for further proceedings the district court's decision cited by the Capital One Defendants in their opening brief.

4

Court concluded that these allegations were sufficient because they gave a "fairly specific account" of key underwriters' practices and "alleged facts that tied the purported practices to the specific securities at issue." *Id.*, *10 n.7 (citing *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 772-74 (1st Cir.2011)).

FHLB makes no attempt to meet that standard with respect to the claims against the Capital One Defendants. There is no allegation that CS-40 underwrote a single loan that found its way into any one of the three Chevy Chase trusts at issue. There is no allegation that CS-40 worked at B.F. Saul during the period that the loans at issue were underwritten. There is no allegation that the branch office where CS-40 worked ever supplied a single loan to any of the three trusts. In fact, there is no allegation that CS-40 ever saw any underwriting guidelines for any of the loans deposited into any of the three trusts.

FHLB's case depends entirely on the testimony of one unnamed ex-employee (out of the thousands that worked for subsidiaries of the Capital One Defendants). As both *Nomura* and *New Jersey Carpenters* demonstrate, this showing is insufficient. As required by Fed. R. Civ. P. 8, as well as the Supreme Court's rulings in *Twombly* and *Iqbal*, FHLB must show more than the "sheer possibility that [the Capital One Defendants have] acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that merely pleads facts consistent with liability is fatally deficient. *Id.*

FHLB's Amended Complaint fails to satisfy the minimum pleading requirements spelled out by the Federal Rules and the Supreme Court to allege a cause of action against the Capital One Defendants; indeed, it is not even a close call. FHLB has already once amended its complaint. It has not requested further leave to amend; none should be given.

CAPITAL ONE FINANCIAL CORPORATION;
CAPITAL ONE, NATIONAL ASSOCIATION;
CHEVY CHASE FUNDING LLC,

By their attorneys,

/s/ Patrick T. Voke
Patrick T. Voke (BBO #553033)
LeClairRyan, A Professional Corporation
One International Place, 11th Floor
Boston, MA 02110
Tel: (617) 502-8229
Fax: (617) 502-8269
patrick.voke@leclairryan.com

James A. Murphy
Cameron S. Matheson (BBO #636628)
Murphy & McGonigle, PC
4870 Sadler Rd., Suite 301
Glen Allen, VA 23060
Tel: (804) 762-5330
Fax: (804) 762-5360

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants on the Notice of Electronic Filing (NEF).

/s/ Patrick T. Voke
Patrick T. Voke

Dated: March 4, 2013