**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

FEDERAL HOME LOAN BANK OF
BOSTON,

                                Plaintiff,

        v.

ALLY FINANCIAL, INC. F/K/A GMAC LLC,
et al.,

                              Defendants.

Civil Action No. 1:11-cv-10952-GAO

ORAL ARGUMENT REQUESTED

---

**COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF MOTION TO DISMISS**

The Countrywide Defendants[1] join Defendants' Reply Memorandum of Law and respectfully submit this supplemental reply brief in further support of their arguments for dismissal of the negligent misrepresentation claim asserted against them.

## ARGUMENT

Plaintiff does not deny that the allegations against Countrywide in *Stichting Pensioenfonds ABP v. Countrywide Financial Corporation*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011), and related MDL cases are substantively identical to the allegations made against Countrywide here. (*See* CW Mem. at 4-5; Opp'n at 94.) Nor can Plaintiff dispute that the inquiry notice standard applied in *Stichting* is functionally identical to the standard that applies here. (*See* Opp'n at 89-90.)[2] Unable to distinguish *Stichting* on either the facts or the law, Plaintiff argues that *Stichting* was wrongly decided. None of Plaintiff's arguments has merit.

*First*, Plaintiff argues that it could not have been on inquiry notice before a ratings downgrade. (Opp'n at 94.) But the cases Plaintiff relies upon are factually inapposite because they did not concern or consider the *Countrywide-specific* "rash of lawsuits, press reports, and publicly filed documents" criticizing Countrywide loan origination. *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 1322884, at *3-4 (C.D. Cal. Apr. 16, 2012). Further, they applied a limitations trigger for federal securities claims under *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010), which, as Plaintiff itself acknowledges, *is not the standard* applicable to Plaintiff's negligent misrepresentation claims. (Opp'n at 89.) The limitations trigger for those claims is the Massachusetts "discovery rule," under which a cause of action

---

[1] Defined terms used but not defined herein are as defined in the Countrywide Defendants' Supplemental Memorandum of Law in Support of Motion to Dismiss, filed October 11, 2012 ("CW Mem."). Citations to "Opp'n" are to Plaintiff's Opposition to Defendants' Joint Motion to Dismiss the Amended Complaint.

[2] *Compare Stichting*, 802 F. Supp at 1140 (statute of limitations begins to run when "a reasonable person . . . would have been on notice of a potential misrepresentation"), *with Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006) ("A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury").

accrues and the limitations period starts to run when a plaintiff "should reasonably have discovered [] that she has been harmed or *may have been harmed* by the defendant's conduct." *Bowen v. Eli Lilly & Co.*, 557 N.E.2d 739, 741 (Mass. 1990) (emphasis added).

Under Massachusetts law, a misrepresentation plaintiff suffers injury and its cause of action thus generally accrues at the time of the challenged transaction. *See, e.g.*, *Salois v. Dime Sav. Bank of NY*, 128 F.3d 20, 25 (1st Cir. 1997); *In re Robert*, 432 B.R. 464, 470 (Bankr. D. Mass. 2010). Indeed, under Plaintiff's theory of the case, its certificates were, upon issuance, riskier than represented. (*See* Am. Compl. ¶ 6.) Thus, the only relevant question respecting the timeliness of Plaintiff's negligent misrepresentation claims is when Plaintiff was on inquiry notice of a potential misrepresentation, i.e., "when the first event occur[red] that would [have] prompt[ed] a reasonable person to inquire into a possible injury at the hands of the defendant." *Epstein*, 460 F.3d at 187. Judge Pfaelzer confronted this precise issue in *Stichting*, explaining: "The injury that Plaintiff alleges is that it purchased riskier-than-advertised RMBS . . . It follows that the injury accrued at the same time the alleged misrepresentations came to light, not at the time the risk actually materialized in the form of defaults or lower market values." *Stichting*, 802 F. Supp. 2d at 1135. In other words, under the discovery rule, notice of a misrepresentation *is* notice of injury triggering the limitations period. *See, e.g.*, *Bowen*, 557 N.E.2d at 741 ("The plaintiff need not know the full extent of the injury before the statute starts to run.").[3]

*Second*, Plaintiff argues that earlier lawsuits could not have provided inquiry notice because the Countrywide Defendants have denied (and continue to deny) liability in those

---

[3] *See also, e.g.*, *Key Trust Co. of Maine v. Doherty, Wallace, Pillsbury and Murphy, P.C.*, 811 F. Supp. 733, 739 (D. Mass. 1993) ("plaintiff's argument that the statute of limitations did not begin to run until the plaintiff actually suffered harm as a result of the alleged malpractice is without merit. Notice of the 'harm' occurs when the plaintiff has knowledge of its exposure to liability, not when it must actually write the check."); *Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 28 (Mass. App. 2002) ("the pertinent inquiry here with regard to accrual is not when the plaintiff first had to pay unanticipated premiums . . . , but rather, when the plaintiff was on notice that he had purchased a policy that was to cost him far more than originally represented.").

actions.  (Opp'n at 94.)  However, the authority cited as support for this argument, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958 (N.D. Cal. 2010), did not involve Countrywide-specific public reports or even consider prior lawsuits; in fact, the same court later held in a related proceeding that earlier-filed lawsuits *did* provide inquiry notice.  *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 4117477, at *6-7 (N.D. Cal. Oct. 19, 2010).  Simply put, Plaintiff's suggestion that "so long as a defendant denies wrongdoing . . . the statute of limitations cannot begin to run," is "plainly without merit." *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 483 (S.D.N.Y. 2000).  Once a plaintiff is on notice of litigation challenging the defendant's conduct, the defendant's denial of wrongdoing – even if communicated directly to the plaintiff – cannot negate notice or prevent the limitations period from running.  *See, e.g.*, *Whitcomb v. Pension Dev. Co.*, 808 F.2d 167, 172 (1st Cir. 1986); *Slavin v. Morgan Stanley & Co.*, 791 F. Supp. 327, 331 (D. Mass. 1992).[4]

  *Third*, Plaintiff argues that *Stichting* promotes a "rush to the courthouse."  (Opp'n at 95.) This misperceives the standard for inquiry notice, which asks whether a "reasonable person" – not an irresponsible one – would have been prompted to investigate a potential misrepresentation.  *See supra* note 2.  In view of the deluge of Countrywide-specific public allegations by no later than February 14, 2008, Plaintiff's decision to wait more than three years thereafter to file misrepresentation claims making identical allegations contravened the "long-standing important policy considerations underlying the enforcement of statutes of limitations." *Swasey v. Barron*, 703 N.E.2d 1208, 1212 (Mass. App. 1999); *see Kay v. Johnson & Johnson*, 722 F. Supp. 874, 884 (D. Mass. 1989), *aff'd*, 902 F.2d 1 (1st Cir 1990).

---

[4] *See also, e.g.*, *Great Rivers Cooperative of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 898-99 (8th Cir. 1997) (defendant's statements that lawsuit was "ludicrous" and "ridiculous" did not preclude inquiry notice); *GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 332 (S.D.N.Y. 2008) ("outright denials" could not toll statute of limitations where prior lawsuits gave rise to inquiry notice).

## CONCLUSION

The Countrywide Defendants respectfully request that the Court enter an order

dismissing with prejudice all claims against the Countrywide Defendants or otherwise based on

Countrywide-related offerings or certificates and, in all events, dismissing the negligent

misrepresentation claim against the Countrywide Defendants.

Respectfully submitted,

SHEARMAN & STERLING LLP


**/s/** Kirsten Nelson Cunha
Kirsten Nelson Cunha (BBO # 634520)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Tel: (212) 848-4320
Fax: (646) 848-4320

Adam S. Hakki
John Gueli
Daniel Lewis
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Tel: (212) 848-4000
Fax: (646) 848-4000

*Attorneys for Countrywide Financial*
*Corporation, Countrywide Home Loans, Inc.,*
*Countrywide Securities Corp., CWMBS, Inc.,*
*and CWALT, Inc.*

Dated:  March 4, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document was served upon counsel of record through electronic filing on March 4, 2013.


/s/ Kirsten Nelson Cunha
Kirsten Nelson Cunha

NYDOCS04/555440.3