UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10952-GAO

FEDERAL HOME LOAN BANK OF BOSTON,
Plaintiff,

v.

ALLY FINANCIAL, INC., et al.,
Defendants.

OPINION AND ORDER
September 30, 2013

O'TOOLE, D.J.

This action arises from the sale of over $5.7 billion in Private Label Mortgage-Backed Securities ("PLMBS") by certain defendants to the plaintiff, Federal Home Loan Bank of Boston ("the Bank"). The Bank alleges that the rating agency defendants, The McGraw-Hill Companies, Standard & Poor's Financial Services, Moody's Investors Service, Inc., and Moody's Corporation, knowingly engaged in practices that caused the AAA ratings assigned to PLMBS purchased by the Bank to vastly understate their risk and overstate their creditworthiness.[1] The Bank asserts claims of fraud, negligent misrepresentation, and violation of Massachusetts General Laws Chapter 93A, Section 11. The defendants have moved to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). The Bank contends that the exercise of general jurisdiction is proper because of these defendants' contacts with Massachusetts.

---

[1] The McGraw-Hill Companies, Standard & Poor's Ratings Services, and Standard & Poor's Financial Services LLC will be referred to hereafter collectively as "S&P." Moody's Investors Service, Inc. and Moody's Corporation will be collectively referred to as "Moody's."

**I.**     **Legal Standard**

Personal jurisdiction may be exercised over an out-of-state defendant under either specific jurisdiction or general jurisdiction. General jurisdiction, relied on by the Bank here, exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

It is up to the plaintiff to demonstrate that personal jurisdiction exists, and a plaintiff may do so by making a prima facie showing of the propriety of the exercise of personal jurisdiction over a defendant. Id. at 618-19. Under the prima facie inquiry, a district court may accept as true properly supported proffers of facts by the plaintiff. Id.

Determining whether personal jurisdiction is proper involves two steps. The plaintiff must have satisfied both the requirements of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, as well as "the strictures of the Constitution." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).

The Massachusetts long-arm statute authorizes jurisdiction over a defendant that has "caus[ed] tortuous injury in the commonwealth by an act or omission outside this commonwealth if [it] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(d).

Under the Due Process Clause of the Constitution, personal jurisdiction exists where a defendant exhibits "minimum contacts" with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2848 (2011); accord Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Courts "concentrate on the quality and quantity of contacts between the potential defendant and the forum." Swiss Am. Bank, Ltd., 274 F.3d at 619 (internal quotation marks omitted).

**II.   Discussion**

Using the prima facie inquiry, I rely on the following proffered facts:

A.   S&P

The McGraw-Hill Companies, Inc. is a New York corporation that maintains an office at 420 Boylston Street in Boston, Massachusetts, and is registered to do business in Massachusetts. Through its credit rating division Standard & Poor's Ratings Services, The McGraw-Hill Companies provides global credit ratings, indices, and risk evaluation to investors, corporations, governments, financial institutions, investment managers, and advisors. Standard & Poor's Ratings Services operates an office at 225 Franklin Street in Boston, Massachusetts, and is registered to do business in Massachusetts. The McGraw-Hill Companies, Inc. has since transferred certain assets and properties associated with its Standard & Poor's division to Standard & Poor's Financial Services LLC.

In 2011 The McGraw-Hill Companies derived $184 million in revenue from Massachusetts sales, $118 million of which is attributable to Standard & Poor's Financial Services LLC. Together, the two pay taxes in Massachusetts, have leased three business properties in Massachusetts, and have retained over 200 employees in Massachusetts each year

since at least 2005. Between 2007 and 2012 S&P rated over 12,000 municipal bonds issued by Massachusetts, its agencies, and Massachusetts cities and towns. The rating process sometimes involves meetings and investigations in Massachusetts. S&P also conducts seminars and training sessions periodically in Massachusetts.

S&P's contacts with Massachusetts are "continuous and systematic," rendering it essentially "at home in the state." See Goodyear, 131 S. Ct. at 2851. S&P has established a physical presence in Massachusetts by renting multiple office spaces and employing a significant workforce, and it has earned hundreds of millions of dollars as a result of its business in Massachusetts. Such contacts are substantially greater than those that the First Circuit has previously deemed insufficient to establish general jurisdiction. Cf. Glater v. Eli Lilly & Co., 744 F.2d 213, 215 (1st Cir. 1984) (determining general jurisdiction did not attach to an Indiana corporation that conducted business, advertised, and employed eight sales representatives in New Hampshire); Noonan v. Winston Co., 135 F.3d 85, 93 (1st Cir. 1998) (holding that jurisdiction did not exist over a foreign company that for two years sent an employee to Massachusetts to photograph the plaintiff and was compensated $585,000).

S&P argues that a relatively small percentage of its employees work in Massachusetts and that its corporate operations occur elsewhere. The enormity of S&P's operations does not eclipse the fact that it has three physical office locations in Massachusetts with over 200 employees, it engages in rating Massachusetts agencies, and its employees attend meetings at the offices of Massachusetts clients. Especially in light of the substantial revenue it derives from Massachusetts, S&P has sufficient contacts in Massachusetts to support the exercise of personal jurisdiction without offending due process.

B.  Moody's

Moody's Investors Service, Inc. is a Delaware corporation that occupies office space at 175 Federal Street in Boston, Massachusetts, and was, until recently, registered to do business in Massachusetts. Moody's Investors Service, Inc., a wholly-owned subsidiary of defendant Moody's Corporation, provides credit ratings and research. Moody's Corporation provides research, data, and analytical tools, as well as risk management software. Moody's has three or four employees in Massachusetts, pays taxes in Massachusetts, and has leased office space in Boston since at least 2005. Moody's markets its subscription-based ratings products to Massachusetts residents, and it averaged $23 million in revenue from Massachusetts customers annually from 2006 through 2011. It rated over 12,000 municipal bonds issued by Massachusetts, its agencies, and its cities and towns between 2007 and 2012.

Moody's errs in stating that for general jurisdiction to exist "a forum must effectively function as a corporation's base." (Defs.' Mem. in Supp. of Mot. to Dismiss at 3 (dkt. no. 195).) Rather, the test remains whether a defendant "has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Goodyear, 131 S. Ct. at 2853 (alteration in original) (internal quotation marks omitted) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Moody's emphasizes that only three or four of its employees work in Massachusetts, and that they lack the capacity to produce or release any of Moody's opinions or publications. Moody's also argues that less than two percent of its business is derived from Massachusetts sales, but neither of those facts is dispositive.

According to the Bank's proffer, Moody's has rated over 12,000 municipal bonds issued by Massachusetts, its agencies, and its cities and towns between 2007 and 2012. The Bank

represents that Moody's, in annually rating the Bank's creditworthiness, visits the Bank's headquarters in Boston and performs detailed reviews of Bank records, and does so for other Massachusetts entities that it rates as well. Moody's also advertises its products in Massachusetts, leases office space in Massachusetts, holds training sessions and seminars in Massachusetts, and gains substantial revenue from Massachusetts.

Further, a finding of general jurisdiction is appropriate when "it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011). Both Moody's and S&P have benefitted from significant systematic and continuous contacts with Massachusetts.

C.   Reasonableness Analysis

Even where continuous and systematic contacts have been established, the exercise of jurisdiction must still be shown to be reasonable under the so-called "Gestalt factors." Swiss Am. Bank, Ltd., 274 F.3d at 618-19. This analysis focuses on five factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the common interests of all sovereigns in promoting substantive social policies. EIQnetworks, Inc. v. BHI Advanced Internet Sol'ns, Inc., 726 F. Supp. 2d 26, 35 (D. Mass. 2010) (citations omitted).

For the burden to be unreasonable it would have to appear that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996) (internal quotation marks omitted). Given that Moody's and S&P both retain offices in Massachusetts, attend to business at

the offices of their Massachusetts clients, and are already represented by local and national counsel in this action without undue hardship, they have failed to show any unusual burden.

Massachusetts has a demonstrable interest in "providing its residents with a convenient forum for redressing injuries inflicted by out of state actors." Burger King v. Rudzewicz, 471 U.S. 462, 473 (1985). The Bank also has an interest in litigating in Massachusetts as all of its witnesses, documents, and materials are located in Boston, and the rest of the claims that stem from the same occurrence are being brought in Massachusetts. Further, a plaintiff's choice of forum should be given deference. Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). Finally, a sovereign interest exists in Massachusetts' exercise of jurisdiction over S&P and Moody's, as states have an interest in redressing harms inflicted on their citizens and providing a convenient forum in which they may seek relief.

### III.     Conclusion

For the foregoing reasons, Moody's Motion to Dismiss (dkt. no. 194) and S&P's Motion to Dismiss (dkt. no. 212) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge