UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10952-GAO

FEDERAL HOME LOAN BANK OF BOSTON,
Plaintiff,

v.

ALLY FINANCIAL, INC., et al.,
Defendants.

OPINION AND ORDER
September 30, 2013

O'TOOLE, D.J.

This case arises from the purchase of over $5.7 billion in private label mortgage-backed securities ("PLMBS") by the plaintiff, the Federal Home Loan Bank of Boston ("the Bank"). The Bank has brought suit against defendants falling into various categories: depositors, sponsors, underwriters, corporate sellers, controlling persons, and successors. The following claims have been asserted against the defendants who fall into those several categories (collectively "the securities defendants"):

> Count I: Violation of Massachusetts Uniform Securities Act ("MUSA") §
> 410(a)(2) by Depositors, Underwriters, and Corporate Sellers, and their
> Successors
> Count II: Violation of MUSA § 410(b) by Controlling Persons
> Count III: Negligent Misrepresentation by Sponsors, Depositors, Underwriters,
> Corporate Sellers, and their Successors
> Count IV: Violation of Chapter 93A by Sponsors, Depositors, Underwriters,
> Corporate Sellers, and their Successors

The securities defendants collectively filed a motion to dismiss (dkt. no. 199), joined by all but four defendants in the relevant categories.[1] In addition, the Capital One defendants and the Wells Fargo defendants have filed separate motions to dismiss (dkt. nos. 196, 214). The latter motion (dkt. no. 214) is terminated as Moot, as the Bank has dismissed with prejudice all claims against the Wells Fargo defendants. (See Notice of Dismissal (dkt. no. 289).)

The Amended Complaint (dkt. no. 180) describes the securitization process in the following way: A depositor or depositor/issuer acquires an inventory of loans from a sponsor. The sponsor and depositor pool the loans, creating tranches of interests with various levels of seniority and thus with different levels of risk and reward. The depositor then transfers the pool of loans to a trust which issues certificates representing interests in the trust that can be purchased by investors. A credit rating agency rates each tranche of the certificates. The certificates are placed with an underwriter, who offers and sells them to investors.

## I. Pleading Standard

As a preliminary matter, the defendants insist that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies because the claims sound in fraud. I disagree. Counts I and II, brought under MUSA § 410, are not claims for fraud; "unlike fraud claims, they do not require showing scienter or reliance." Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., 2013 WL 535320, at *1 (D. Mass. Feb. 13, 2013) (citing Marram v. Kobrick Offshore Fund, Ltd., 802 N.E.2d 1017, 1026-27 (Mass. 2004)). Neither are Counts III and IV, for negligent misrepresentation and violation of Massachusetts General Laws Chapter 93A. Unless

---

[1] "Except for Residential Accredit Loans, Inc. and Residential Funding Company, LLC f/k/a Residential Funding Corporation (against which this proceeding has been automatically stayed by virtue of 11 U.S.C. § 362) and Ally Financial Inc. and GMAC Mortgage Group LLC (against which the action is temporarily stayed under a stipulated order of the United States Bankruptcy Court for the Southern District of New York), all other Defendants join in this Motion." (Joint Mot. to Dismiss at 21, n. 2 (dkt. no. 200).)

the claims "sound in fraud" or contain "averments of fraud," the requirements of Rule 9(b) are not triggered. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996), abrogated in part on other grounds by 15 U.S.C. § 78u–4(b).

Here, the Bank's claims against these defendants do not sound in fraud. The allegations are that the defendants made knowing misrepresentations and omissions, but such allegations "cannot be thought to constitute 'averments of fraud,' absent any claim of scienter and reliance. Otherwise, any allegation of nondisclosure of material information would be transformed into a claim of fraud for purposes of Rule 9(b)." Id. Further, the Bank's allegations that the defendants knew or should have known about the riskiness of the PLMBS do not trigger Rule 9(b). See Lenartz v. Am. Superconductor Corp., 2012 WL 3039735, at *19-20 (D. Mass. July 26, 2012). Therefore, Rule 9(b) does not apply, and these claims will be examined under Rule 8(a) and relevant case law.

## II.   Actionable Misstatements or Omissions

The Bank alleges misstatements in seven categories as the basis for all four claims: underwriting standards, loan-to-value ("LTV") ratios, credit ratings, predatory lending guidelines, due diligence, loan transfer and assignment, and compound risks.

### A.   Underwriting Standards

The Bank argues that under Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762 (1st Cir. 2011), allegations of industry-wide misconduct, linked to the specific defendant institutions, are sufficient to adequately plead a claim against any defendant. The defendants, however, argue that in Nomura the First Circuit observed the specific allegations were barely sufficient to state a claim, and here, they argue, the Bank alleges fewer facts as to each defendant.

Other judges in this district, applying <u>Nomura</u>, have denied motions to dismiss where it was alleged that there was an industry-wide practice of abandoning underwriting guidelines, that the underlying loans experienced high percentages of defaults, delinquencies, and foreclosures, and a subsequent analysis of the loan data confirmed an abandonment of underwriting standards. <u>See, e.g.</u>, <u>Capital Ventures Int'l v. UBS Secs. LLC</u>, 2012 WL 4469101, at *4-5 (D. Mass. Sep. 28, 2012); <u>Mass. Mut. Life Ins. Co. v. Residential Funding Co.</u>, 843 F. Supp. 2d 191, 200 (D. Mass. 2012). The Bank has made such allegations here. The Amended Complaint includes detailed factual allegations specific to the originator defendants that support a plausible inference that they had abandoned their underwriting procedures, rendering the offering documents' disclosures about such procedures actionable misstatements.

### B.      Appraisals and LTV Ratios

The Bank asserts that the offering documents contained misrepresentations that the LTV ratios were based on appraisals that were conducted according to sound appraisal standards.

Under <u>Nomura</u>, a claim arising from alleged misstatements about appraisal standards must be supported by specific allegations. <u>Nomura</u>, 632 F.3d at 774. The Bank used an automated valuation model ("AVM") to calculate the values of the underlying mortgaged properties at the time of loan origination. The AVM allegedly reveals that appraisals of the loans backing the certificates at issue were consistently inflated, and the LTV ratios were consistently understated. Such reliance on AVM data satisfactorily states a claim. <u>See, e.g.</u>, <u>Mass. Mut.</u>, 843 F. Supp. 2d 191; <u>Capital Ventures v. J.P. Morgan</u>, 2013 WL 535320; <u>Capital Ventures Int'l v. UBS Secs. LLC</u>, 2012 WL 4469101.

C.      Credit Ratings

The Bank's claim here is that because the defendants gave faulty and inaccurate data (for example, appraisal values) to the rating agencies, they knew that the ratings based on such data were misleading, as were the representations about the rating process in their offering documents. The defendants argue that the Bank has failed to properly allege that each defendant disbelieved the credit ratings. But "given that [the Bank] alleges defendants knew the ratings were based on faulty data, it would be hypertechnical to require that [the Bank] also explicitly plead defendants' disbelief." Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., 2013 WL 535320, at *6, n.7 (D. Mass. Feb. 13, 2013). Furthermore, "[d]efendants' representations about the process by which credit ratings are generated may be actionable even if the opinion expressed by the rating is not." Id. at *6.

D.      Other Misstatements

The defendants' arguments as to the remaining categories are largely identical. They argue that the allegations are not tailored specifically to any of the underlying loans; for example, there is no specific allegation that any single loan was tainted by predatory practices or that any single loan was invalidly assigned or transferred. Again, however, the Bank alleges that the practices were so systemic and widespread that the representations made in the offering documents were misleading. The Bank's claim is not, for example, that every loan underlying the certificates at issue involved predatory lending or was invalidly assigned, but rather that the representation that "each loan" complied with predatory lending laws was untrue.

The Bank's claims as to all seven categories of misstatements are adequately pled.

**III.**   **Count I: Violation of MUSA § 410(a)(2)**

Under MUSA § 410(a)(2), liability arises as to any person who:

> offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . .

M.G.L. ch. 110A, § 410(a)(2).

A.   Underwriters

The MUSA claim against the underwriters is adequately pled, and the defendants do not specifically argue otherwise.

B.   Depositors

The defendants argue that the depositors cannot be held liable under § 410(a)(2) because they did not offer or sell securities to the Bank. MUSA and Section 12 of the Securities Act of 1933 define the terms "sell" and "offer" in identical ways. Compare M.G.L. ch. 110A, § 401(h)(i)(1)-(2), with 15 U.S.C. § 77b(a)(3). The Massachusetts legislature has directed courts to interpret MUSA "in coordination with the Securities Act of 1933. . . . Accordingly, we look to Federal decisions under § 12(2), as well as to the plain language of the statute . . . for our interpretation of G.L. c. 110A, § 410(a)(2)." Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1025 (Mass. 2004) (citations omitted).

The Supreme Court has ruled that under Section 12, liability extends to those who transfer title to the plaintiff and to the person who "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Pinter v. Dahl, 486 U.S. 622, 647 (1988). It is not enough to allege that a defendant was a "substantial factor in causing the sale of . . . securities," id. at 654; the defendant must be "directly involved in the actual solicitation of a securities purchase . . . ." Shaw v. Digital Equip.

6

Corp., 82 F.3d 1194, 1215 (1st Cir. 1996) (internal citations omitted). "The relevant inquiry focuses on the defendant's relationship with the plaintiff-purchaser, not his relationship with other defendants or the product eventually sold." Capital Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., 2013 WL 535320, at *7 (D. Mass. Feb. 13, 2013) (internal citations omitted).

The Bank does not dispute that depositors are not offerors or sellers of securities under Pinter and Shaw, but it instead relies on SEC Rule 159A promulgated in 2005 that states that "seller shall include the issuer of the securities sold . . . and the issuer shall be considered to offer or sell the securities." 17 C.F.R. § 230.159A. The Bank argues that the SEC Rule trumps the Supreme Court's earlier Pinter decision under the Chevron doctrine because the underlying statute was ambiguous and the agency interpretation was reasonable. However, as the court ruled in In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig., 2013 WL 1189311 (C.D. Cal. Mar. 15, 2013), the Pinter Court determined that "its construction follow[ed] from the unambiguous terms of the statute and thus le[ft] no room for agency discretion." Id. at *15 (citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005)). An SEC regulation "cannot countermand a contrary Supreme Court holding." Mass. Mut. Life Ins. Co. v. Residential Funding Co., 843 F. Supp. 2d 191, 207 (D. Mass. 2012) (dismissing MUSA § 410(a) claims against non-underwriter defendants under Pinter and Shaw). Further, a court interpreting MUSA § 410(a)(2) may be guided by judicial decisions regarding Section 12 but is not bound by agency rules. Cf. Marram, 809 N.E.2d at 1025 (citing case law and legislative history supporting the use of judicial precedent construing the federal statute in interpreting the state statute). Here, because judicial precedent makes clear that the depositors are not sellers under the federal act, it is likely the same result would be reached by Massachusetts courts interpreting the state act.

Accordingly, the § 410(a)(2) claim will be  dismissed as to the depositor defendants and their successors.

### C.    Corporate Sellers

A corporate seller is defined in the Amended Complaint as an entity not acting as an underwriter that directly sold a particular certificate to the Bank. The Complaint names five corporate sellers from whom the Bank purchased six certificates: Banc of America Securities LLC (¶ 35), Bear, Stearns & Co. Inc. (¶ 47), Citigroup Global Markets Inc. (¶ 56), Deutsche Bank Securities Inc. (¶ 77), and UBS Securities LLC (¶ 115).

The defendants argue that MUSA does not apply to secondary market transactions, relying on a Supreme Court case holding that Section 12(2) did not apply to a private sale contract because liability arises only where a person "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact . . . ." See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 567-76 (1995) (quoting 15 U.S.C. § 77*l*(2)). Although coordination between the federal and state securities statutes is desirable, see Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1025 (Mass. 2004), here the plain language of the state statute makes clear that in this respect the scope of the state statute is broader than that of the federal statute. The state statute "makes no reference to a prospectus and imposes liability on any person who 'offers or sells a security by means of any untrue statement of a material fact or omission . . . .'" Feldman v. Aspen Tech., Inc., 2007 WL 1089220, at *5 (Mass. Super. Ct. Mar. 3, 2007) (quoting M.G.L. ch. 110A, § 410(a)(2)). In light of the plain language, "it would be inappropriate to imply a prospectus requirement into the Act and then to dismiss [this claim] on the basis that liability under § 410(a)(2) is limited to public offerings." Id.

The defendants also argue that the Bank has failed to plead that the corporate sellers made any of the alleged misstatements, as they did not draft or prepare the offering documents. However, the defendants fail to provide any support for the proposition that one must author a misstatement in order to be held liable under § 410(a)(2). In fact, the statutory language supports the contrary position, in that the security at issue must be offered or sold "by means of" an untrue statement or material omission of fact. M.G.L. ch. 110A, § 410(a)(2). The Bank has adequately pled that the corporate sellers, by using the offering materials in connection with the transactions at issue, violated § 410(a)(2).

D.    Successors

The successor defendants only take issue with the claims to the extent that the claims against their predecessors fail. The claims against the successors of the depositor defendants will be dismissed.

IV.    **Count II: Violation of MUSA § 410(b)**

Under § 410(b) of MUSA:

Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions . . . are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

M.G.L. ch. 110A, § 410(b).

The parties disagree as to whether controlling persons under § 410(b) must actually exercise control or merely possess the power to control the seller. But even if entities must actually exercise control to be liable as controlling persons, the Bank has met the pleading standard. (See, e.g., Am. Compl. ¶¶ 724, 725.) The Bank's claims under § 410(b) as to controlling persons are adequately pled.

However, Count II is dismissed as to entities being sued as controlling persons of depositors, as well as entities being sued as controlling persons or successors of controlling persons of depositors.

## V.    Count III: Negligent Misrepresentation

In light of the reference to Massachusetts cases in the briefing, the Court assumes that there is no dispute that Massachusetts law applies to the claims against the securities defendants. Under Massachusetts law, a claim for negligent misrepresentation requires a showing that:

> the defendant (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Gossels v. Fleet Nat'l Bank, 902 N.E.2d 370, 377 (Mass. 2009).

The defendants argue, among other things, that no reasonable jury could find that the Bank reasonably relied on the alleged misstatements, and that the Bank fails to plead facts to support that the defendants failed to exercise reasonable care. I disagree.

The defendants further contend that this claim must fail as to defendants who are not in privity with the Bank: the depositors, sponsors, and other underwriter defendants who participated in structuring the securities, purchasing the loans, performing due diligence, drafting the offering documents, and marketing the certificates. However, unlike New York law,

Massachusetts law on negligent misrepresentation does not require a "special relationship" to give rise to a duty of care, but where there is no privity, a defendant must have "actual knowledge . . . of the limited – though unnamed – group of potential third parties that will rely upon the [representation], as well as actual knowledge of the particular financial transaction that such information is designed to influence." Nycal Corp. v. KPMG Peat Marwick LLP., 688 N.E.2d 1368, 1372 (Mass. 1998). In other words, the Bank must adequately allege that the defendants knew of a limited group of investors that would rely on the offering documents in purchasing the securities.

The Bank plausibly contends that only a small group of potential institutional investors exist for securities as complex and as high in value as the ones at issue. That is sufficient.

Count III will not be dismissed as to any defendants.

## VI.     Count IV: Violation of Chapter 93A

The defendants argue that the Bank fails to state a claim under Massachusetts General Laws Chapter 93A, Section 11, because the conduct alleged does not rise to the level of "unfair or deceptive" conduct, it did not occur "primarily and substantially in Massachusetts," and the Bank fails to plead facts establishing causation of loss.

The Bank adequately alleges that the defendants engaged in unfair or deceptive conduct.

Further, the Bank correctly points out that the "primarily and substantially" condition is an affirmative defense, meaning that the burden is on the defendant. See Amcel Corp. v. Int'l Exec. Sales, Inc., 170 F.3d 32, 35 (1st Cir. 1999). "[F]or dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings." Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (internal quotation marks omitted). From the face of the pleadings, it is not clear that the

defendants' conduct did not occur primarily and substantially in Massachusetts, as courts must consider "not only the site of the wrongful acts but also where the plaintiff 'received and acted upon' the wrongful acts and the site of the loss or damages." Amcel Corp., 170 F.3d at 34 (1st Cir. 1999) (citing Clinton Hosp. Ass'n v. Corson Grp., Inc., 907 F.2d 1260, 1265-66 (1st Cir. 1990)). At any rate, there is no pleading deficiency.

The Bank also has adequately pled causation. The defendants point to the Bank's prior "admissions," acknowledging that its losses were due to "illiquidity in the capital markets due to the turmoil in housing credit" and "uncertainty about the future of the housing market and broader economy." (Joint Mot. to Dismiss at 63.) The Bank reasonably explains that although it initially believed that economic conditions were the primary cause of its losses, it discovered otherwise after extensive investigation. The defendants cite no authority to support their assertion that the Bank somehow forfeited its 93A claim by making tentative pre-litigation statements surmising about the cause of its losses.

## VII.  Statute of Limitations

The statute of limitations on MUSA claims are subject to a four-year statute of limitations, running from the date of "the discovery by the person bringing the action of a violation." M.G.L. ch. 110A, § 410(e). 93A claims are also subject to a four-year limitations period, and Massachusetts state law claims for negligent misrepresentation are subject to a three-year limitations period. The original complaint in this case was filed on April 20, 2011.

The defendants argue that all of the Bank's claims are time-barred because it was on actual or inquiry notice of the facts underlying the claims before April 20, 2007. Where "a defendant contends that 'storm warnings' triggered the statute of limitations period, 'the defendant bears the initial burden of establishing the existence of such warnings.'" Capital

Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp., 2013 WL 535320, at *13 (D. Mass. Feb. 13, 2013) (citing Young v. Lepone, 305 F.3d 1, 9 (1st Cir. 2002)). Because this is a highly factual inquiry, a claim will be dismissed on such grounds at the pleading stage only where there is "no doubt that [it] is timebarred." Id. (citing Warren Freedenfeld Assocs. v. McTigue, 531 F.3d 38, 46 (1st Cir. 2008)). The defendants have not made this showing, and the Bank's claims will not be dismissed on this basis.

## VIII.   Capital One's Motion to Dismiss

Capital One, in addition to joining in the securities defendants' joint motion to dismiss, has filed its own motion to dismiss. It argues that the factual allegations against it specifically are scant and are not sufficiently tied to any particular loans or certificates. This is nothing more than a restatement of the arguments that I have rejected as to the group as a whole. The general industry based allegations are sufficient.

## IX.    DB Structured Products as Successor

DB Structured Products, Inc. has filed a separate memorandum (dkt. no. 208) in support of the joint motion to dismiss, arguing that it cannot be held liable as a successor to MortgageIT Holdings, Inc., a non-defendant sponsor and controlling person for a number of the securities at issue, and MortgageIT Holdings' subsidiaries. The Bank alleges that MortgageIT Holdings was "merged with and liquidated into . . . MIT Holdings, Inc. . . . a wholly-owned subsidiary of DB Structured Products, Inc." (Am. Compl. at ¶ 185.) All liabilities passed from MortgageIT Holdings to MIT Holdings. (Id. at ¶ 186.) DB Structured Products does not dispute that successor liability is properly alleged as to MIT Holdings.

However, the Bank also asserts successor liability as to DB Structured Products, as MortgageIT Holding's successor, by "actual and de facto merger[]." (Id. at ¶ 190.) It is clear that an actual merger has not occurred between MortgageIT Holdings and DB Structured Products. Moreover, even under Massachusetts law, which the Bank insists should apply here, "the de facto merger theory of successor liability [is] usually . . . applied to situations in which the ownership, assets and management of one corporation are combined with those of another, preexisting entity." Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 255 (Mass. 2008) (internal quotation marks and citations omitted). This is not such a situation. In essence, the Bank suggests that the Court should "pierce the merger," as it were, and declare that the acquiring entity was in fact DB Structured Products, not MIT Holdings. Cf. Morgan v. Powe Timber Co., 367 F. Supp. 2d 1032, 1037-38 (S.D. Miss. 2005) (rejecting the plaintiff's suggestion that the court should "pierce the merger," as "the creation by the acquiring company of a phantom, interim or transitory subsidiary into which the target company can be merged" is a "standard feature of triangular mergers.").

The Bank's suggestion also cuts against the general corporate law principle that parents and subsidiaries are distinct entities. See, e.g., Watters v. Wachovia Bank, N.A., 550 U.S. 1, 43 (2007) ("[T]he primary advantage of maintaining an operating subsidiary as a separate corporation is that it shields the national bank from the operating subsidiaries' liabilities."); United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiary.").

All claims against DB Structured Products as a successor to MortgageIT Holdings and its subsidiaries will be dismissed.

**X.**      **Conclusion**

For the reasons stated above, the securities defendants' Joint Motion to Dismiss (dkt. no.

199) is GRANTED IN PART as follows:

- Count I (MUSA § 410(a)(2)) is DISMISSED as to depositors and their successors;
- Count II (MUSA § 410(b)) is DISMISSED as to controlling persons of depositors, and any successors or controlling persons of such controlling persons; and
- Counts I, II, III, and IV are DISMISSED as to DB Structured Products, Inc. as successor to MortgageIT Holdings, Inc. (n/k/a MIT Holdings, Inc.) and its subsidiaries. Accordingly, DB Structured Products has no liability with respect to the MHL 2005-5 and MHL 2006-1 offerings. The allegations of Counts III and IV asserted against DB Structured Products as sponsor of various securities are not dismissed and remain in the case.

The motion is DENIED in all other respects. Capital One's Motion to Dismiss (dkt. no. 196) is

DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge